OPINION OF THE COURT
 

 Smith, J.
 

 The issue presented on this appeal is whether Family Court properly exercised jurisdiction over the appellant, the uncle of the abused child, as a person legally responsible for his niece’s care
 
 (see,
 
 Family Ct Act § 1012 [a], [g]). Concluding that appellant was a proper respondent in the child protective proceeding pursuant to section 1012 (a) of the Family Court Act, we affirm the order of the Appellate Division.
 

 The respondent on this appeal, the Orange County Department of Social Services (DSS), brought this Family Court Act article 10 proceeding alleging that appellant sexually abused his niece, Yolanda D., during the summer of 1991.
 
 [1]
 
 The petition alleged that the abuse occurred on numerous occasions at appellant’s Pennsylvania home. After a hearing, Family Court found that appellant had sexually abused his 12-year-old niece
 
 *793
 
 during the summer of 1991, and that he had been a person legally responsible for her care during that time. Family Court also found that Yolanda had been sexually abused by the appellant when she was 10 and 11 years old. Yolanda was adjudged an abused child and a dispositional order was entered placing appellant under the supervision of DSS and requiring him to attend a sex offender therapy program. Family Court also directed the entry of an order of protection requiring appellant to stay 1,000 feet away from Yolanda and the other children named in the petition.
 

 Appellant appealed the fact-finding and dispositional orders arguing, in part, that he had not been a proper respondent in the Family Court proceeding because he was not a person legally responsible for Yolanda’s care.
 
 [2]
 
 The Appellate Division rejected appellant’s jurisdictional challenge, determined that appellant’s role was the "functional equivalent of a parent” and affirmed Family Court’s finding that appellant was a proper respondent under section 1012 (a) of the Family Court Act (218 AD2d 648, 651). We granted appellant’s motion for leave to appeal to this Court.
 

 The sole issue raised by the appellant on this appeal is whether he met the statutory definition of a "person legally responsible” for Yolanda’s care during the summer of 1991. A child protective proceeding is brought against a "respondent,” a term defined by article 10 as "any parent or other person legally responsible for a child’s care who is alleged to have abused or neglected such child” (Family Ct Act § 1012 [a]). Section 1012 (g) further defines "person legally responsible” as
 

 "the child’s custodian, guardian, [or] any other person responsible for the child’s care at the relevant time. Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.”
 

 Appellant argues that he did not fit within any of the statutory categories of legally responsible persons at the time the abuse occurred. Initially, appellant contends that he was not a custodian or guardian because he did not have legal custody or guardianship of Yolanda during the summer of 1991. Appel
 
 *794
 
 lant further claims that he could not be considered Yolanda’s custodian because he was not a regular or continuous member of his niece’s household or the functional equivalent of a parent. As to the catch-all provision in the statute, "any other person responsible for the child’s care at the relevant time,” appellant would limit this category to individuals acting in loco parentis or assuming a parental role toward the child, who are also regular or continuous members of the child’s household. DSS, the respondent on this appeal, contends that the record supports the Appellate Division’s affirmance of the finding that appellant was a person legally responsible for Yolanda’s care.
 

 We note that the term "custodian” has not been limited or modified by any qualifiers such as "nontemporary” or "legal.” Indeed, the legislative history and other commentary indicate that a broader definition than that proposed by appellant was intended
 
 (see,
 
 Letter from sponsor of an amendment to section 1012 [g] to the Governor, Bill Jacket, L 1972, ch 1015 [stating the intent to include paramours, persons without legal custody of the child, within the jurisdiction of Family Court]; Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 268).
 

 Moreover, to the extent that the statute provides that custodians may include persons found in the "same household” as the child, section 1012 (g) does not preclude a finding that the child’s regular or continuous presence in another person’s household may make that person a custodian
 
 (see, Matter of Robert J.,
 
 178 AD2d 1004 [grandfather who provided caretaking activities at his home rather than at child’s household found to be a custodian under section 1012 (g)]). Consequently, limiting the scope of "custodian” to embrace only those persons who may be regularly or continuously found in the
 
 child’s
 
 household is unwarranted given the absence of an express directive to construe the statute restrictively
 
 (see, Matter of Maureen G.,
 
 103 Misc 2d 109, 114 ["Subdivision (g) amplifies the class of respondents liable under article 10; it is not meant as a limitation”]).
 
 [3]
 

 Appellant’s narrow interpretation of "other person responsible for the child’s care” is similarly unsupported by the terms
 
 *795
 
 of the statute. By seeking to limit the application of this provision to those persons who may be found in the child’s household on a regular or continuous basis, appellant renders it coextensive with "custodian,” making it superfluous. Since courts must, where possible, give effect to every word of a statute, and "other person responsible” exists side by side with "custodian” in section 1012 (g), a person may be a proper respondent in a child protective proceeding even if that person is not a custodian of the child.
 

 As we must interpret statutes in a manner consistent with and in furtherance of the legislative intent behind the enactment
 
 (Catlin v Sobol,
 
 77 NY2d 552, 558), we turn first to the purpose section of article 10 to discern the meaning of "other person responsible for the child’s care.” The stated purpose of article 10 is to
 

 "help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met” (Family Ct Act § 1011).
 

 Since section 1011 of the Family Court Act casts intervention by a Family Court as an event likely to occur against the wishes of a parent, article 10 proceedings are geared toward protecting the child from injury or mistreatment which may result from abusive or deficient parenting. Subdivisions (a) and (g) of section 1012 embody legislative recognition of the reality that parenting functions are not always performed by a parent but may be discharged by other persons, including custodians, guardians and paramours, who perform caretaking duties commonly associated with parents. Thus, the common thread running through the various categories of persons legally responsible for a child’s care is that these persons serve as the functional equivalent of parents.
 

 Various courts have focused on whether an alleged respondent stands in loco parentis or acts as the functional equivalent of a parent in a household or "family” setting when determining whether that person is legally responsible for the child’s care
 
 (see, e.g., Matter of Anthony YY. [Margaret ZZ.],
 
 202 AD2d 740, 741;
 
 Matter of Jessica QQ. [Dawn RR.],
 
 200 AD2d 887;
 
 Matter of Faith GG. [Terry HH.],
 
 179 AD2d 901,
 
 appeal denied
 
 80 NY2d 752;
 
 Matter of Commissioner of Social
 
 
 *796
 

 Servs. [R./ S. Children],
 
 168 Misc 2d 11;
 
 Matter of Jessica C.,
 
 132 Misc 2d 596, 600). Although the analysis required by both approaches appears similar, whether a person stands in loco parentis to a child is a separate inquiry from whether such a person acts as the functional equivalent of a parent.
 

 A person acting in loco parentis intends to assume the responsibility to support and care for the child on a permanent basis
 
 (Johnson v Jamaica Hosp.,
 
 62 NY2d 523, 529). In contrast, a person may act as the functional equivalent of a parent even though that person assumes temporary care or custody of a child (for example, a paramour may be subject to child protective proceedings as a respondent even if the paramour has no intention of caring for the child on a permanent basis). We therefore reject the argument that article 10 should be applied only to those persons who intend to support and care for a child on a permanent basis. However, the care given the child must be analogous to parenting and occur in a household or "family” setting.
 

 Determining whether a particular person has acted as the functional equivalent of a parent is a discretionary, fact-intensive inquiry which will vary according to the particular circumstances of each case. Factors such as the frequency and nature of the contact between the child and respondent, the nature and extent of the control exercised by the respondent over the child’s environment, the duration of the respondent’s contact with the child, and the respondent’s relationship to the child’s parent(s) are some of the variables which should be considered and weighed by a court in determining whether a respondent fits within the catch-all category of section 1012 (g). The factors listed here are not meant to be exhaustive, but merely illustrate some of the salient considerations in making an appropriate determination. The weight to be accorded each factor will, of course, be dependent on the circumstances of the particular case but the purpose of the inquiry will remain constant.
 

 A person is a proper respondent in an article 10 proceeding as an "other person legally responsible for the child’s care” if that person acts as the functional equivalent of a parent in a familial or household setting. Finally, article 10 should not be construed to include persons who assume fleeting or temporary care of a child such as a supervisor of a play-date or an overnight visitor or those persons who provide extended daily care of children in institutional settings, such as teachers.
 
 *797
 
 We are satisfied that the record here supports the finding that appellant was a person legally responsible for Yolanda’s care during the summer of 1991. Appellant, the brother of Yolanda’s mother, characterized his relationship with his niece during the summer of 1991 as "pretty close, you know, as family.” Appellant testified that his niece visited him at his apartment in Pennsylvania six or seven times (approximately every other week) throughout the summer of 1991, and slept overnight at his home on three or four occasions. Appellant’s girlfriend, who lived with the appellant during the relevant time period, testified that the niece visited two weekends a month during the summer of 1991. These visits occurred with the consent of the mother who did not accompany Yolanda when she went to see her uncle in Pennsylvania or when she stayed overnight at appellant’s apartment. Appellant also regularly visited Yolanda’s home in order to attend birthday parties and to visit his mother.
 

 The record supports the finding that appellant was a person legally responsible for Yolanda either as her custodian or as an "other person responsible” for her care. Yolanda, already familiar with her uncle as a regular visitor in her own home, was a regular visitor at appellant’s Pennsylvania apartment during the summer of 1991 while appellant resided there. Thus, appellant was regularly in the same household as Yolanda during the relevant time, an environment he controlled, and he regarded his relationship with Yolanda as close and familial. Moreover, by permitting Yolanda to stay overnight in his home, appellant provided shelter, a traditional parental function, in an area geographically distant from the child’s own household. The confluence of all of these facts indicates that the Appellate Division had an adequate record basis for affirming the finding that appellant was a person responsible for Yolanda’s care during the summer of 1991.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Cipabick concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . In addition to Yolanda D., the petition named four other children who appellant allegedly neglected. This appeal concerns only that portion of the petition pertaining to Yolanda D.
 

 [2]
 

 . The Appellate Division later dismissed appellant’s appeal from the August 21, 1992 fact-finding order as superseded by the dispositional order entered September 28, 1992.
 

 [3]
 

 . The remaining issues with respect to the custodian category are whether the record supports the finding that appellant was a regular or continuous visitor in Yolanda’s household and whether appellant acted as the functional equivalent of a parent. We conclude that the record supports the determination that appellant was Yolanda’s custodian.