OPINION OF THE COURT
Lillian Wan, J.
In this child protective proceeding, the issue before the court is the admissibility of the out of court statements of a child who is not named as a subject child in the article 10 petition. Based on the record that is currently before the court, the court finds that these statements are inadmissible under Family Court Act § 1046 (a) (vi).
On May 8, 2014, the Administration for Children’s Services (hereinafter ACS or petitioner) filed a child abuse petition against the mother, Damisa H., and stepfather, Robert H., on behalf of the children, Destiny P. (age 11) and Emmallee S. (age 6). The petition alleges that Mr. H. is a person legally responsible for the care of the children in that he is married to the mother, resides in the home, and has care taking responsibilities for the children.[1] The petition further alleges that Mr. H. regularly forced the subject child Destiny and her “friend”[2] to have sex with him after school while the respondent mother was at work. The petition also alleges that the respondent mother failed to ameliorate the risk to the children in that she frustrated the investigation by preventing Destiny from having a medical examination and failed to take appropriate action. Emmallee is alleged to be a derivatively abused child based on the respondents’ actions towards Destiny.
*437 On February 24, 2015, the fact-finding commenced, and the petitioner called the ACS caseworker, Rosezetta Means, to testify. Ms. Means testified that a report was called in to the state central register on April 30, 2014, and that she met the family at the Child Advocacy Center. The subject child Destiny and her friend from school, Sierra, were both separately interviewed by a detective while Ms. Means observed the interviews. According to Ms. Means, Sierra was 10 years old at the time of the interview. When counsel for the petitioner asked the caseworker to testify to Sierra’s out of court statements, a hearsay objection was raised and the court sustained the objection. Ms. Means went on to testify to the subject child Destiny’s out of court statements, as well as her interviews with the mother, the subject child Emmallee, and Mr. H.
On March 17, 2015, the continued fact-finding date, counsel for the petitioner made an oral application to reopen the petitioner’s direct examination of the ACS caseworker for the purposes of eliciting the out of court statements of Sierra based on appellate cases Matter of Ian H. (42 AD3d 701 [3d Dept 2007]) and Matter of Cory S. (Terry W.) (70 AD3d 1321 [4th Dept 2010]). The court permitted oral argument by all counsel on the petitioner’s application. The petitioner contends that Matter of Ian H. and Matter of Cory S. both support the petitioner’s position that Sierra’s statements are admissible under the hearsay exception enumerated in Family Court Act § 1046 (a) (vi) because she is a child who made statements relating to abuse or neglect. Furthermore, the petitioner argues that the respondents were on notice from the petition that there was another child who made allegations of sexual abuse, although the child’s name is not contained in the petition, and that the statement of that child would be relied upon at fact-finding to corroborate the subject child Destiny’s statements. Counsel for respondent Mr. H. argues that admitting the out of court statements of Sierra simply because she is a child that made statements to an ACS caseworker would make a “mockery” out of child protective cases and custody cases. Counsel asserts that broadening the hearsay exception to include any child “on the street” who makes an allegation of sexual abuse would place an undue burden on the parent or caretaker defending the allegation since it would be impossible to rebut the evidence, and the onus would be on the respondent to figure out the identity of such a child. Counsel for the respondent mother also argues that the statements of Sierra are inadmis *438 sible and asserts that the respondent in Ian H. was deemed a person legally responsible for the care of children who were not named as subject children in the petition. The statements of those children were then the basis for a derivative finding as to the respondent’s own children. The attorney for the child Destiny, who opposes a finding in this case, supports the respondents’ position and argues in favor of a narrow reading of the word “child” under the Family Court Act, pointing out that under a plain reading of section 1046, previous statements made by “the” child relating to allegations of abuse or neglect are admissible in evidence, and that the phrase, “the child,” refers only to children who are named in the article 10 petition. The attorney for the subject child Emmallee also contends that the hearsay exception applies only to children who are named as subjects of the current child protective action. The court notes that it has been made clear throughout these proceedings that the petitioner does not intend on calling the subject child Destiny to testify. The attorney for Destiny has represented that the child has recanted her original statements, denies the allegations of sexual abuse, and is supporting a dismissal of the petition.
Family Court Act § 1046 (a) (vi) provides that “previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence.” The word “child” is modified by the word “the” and is not modified by the words “any” or “a.” Family Court Act § 1012 (b) defines the term “child” to mean “any person or persons alleged to have been abused or neglected.” The Third Department, in Matter of Ian H., has held that the section 1012 definition of a child does not mandate a conclusion that the child must be a subject child of the petition in order for his or her out of court statement to be admissible under section 1046 (a) (vi). The Fourth Department has since adopted the Third Department’s definition of child in Matter of Cory S., however no specific facts are set forth in that decision.
This court noted on the record that it is bound by the doctrine of stare decisis which requires a trial court to follow precedents set by the Appellate Division of another department until the trial court’s own department or the Court of Appeals pronounces a contrary rule. (See Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984].) Since the Second Department has not specifically ruled on the issue of whether the out of court statements of a child who is not the subject of *439 the article 10 petition are admissible at fact-finding, this court is therefore bound by the Third and Fourth Departments’ interpretation of the word “child” under article 10 of the Family Court Act to not be limited to only children who are the subject of a petition.[3] However, the court does not read Matter of Ian H. and its progeny as standing for the proposition that any child’s out of court statement relating to abuse or neglect is admissible at a fact-finding proceeding. In Matter of Ian H., the Third Department noted that the Family Court found that the respondent was a person legally responsible for three children who were not the subject of the neglect proceeding. The Third Department further noted that the respondent actively participated in the care of these non-subject children by feeding them, checking their diapers and changing them. (42 AD3d at 701.) Therefore, the essential focus of this court’s inquiry in determining the admissibility of Sierra’s statements is Mr. H.’s relationship with Sierra, and specifically whether respondent Mr. H. could have been named as a person legally responsible for the care of Sierra or whether Sierra could have been named as a subject child in the petition. The court permitted counsel for the petitioner to reopen the caseworker’s direct examination for the purposes of establishing that Mr. H. is a person legally responsible for the care of Sierra. The court indicated that the petitioner would be permitted to elicit the out of court statements of Sierra if they were able to establish that Mr. H. meets the definition of a person legally responsible under Family Court Act § 1012 (g). All counsel were then permitted to cross-examine the caseworker with regard to this limited issue. At the close of the caseworker’s examination, the petitioner contended that Mr. H. was a person legally responsible for Sierra and renewed her application to admit Sierra’s out of court statements through the caseworker. This application was opposed by counsel for the respondents and counsel for the children. The court reserved decision on this issue.
Pursuant to Family Court Act § 1012 (a), a “respondent” is defined as any parent or other person legally responsible for a *440 child’s care who is alleged to have abused or neglected such child. Under Family Court Act § 1012 (g), a “person legally responsible” is defined to include a custodian, guardian, or any other person responsible for the child’s care at the relevant time. The statute further provides that a “[c]ustodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child.”
In Matter of Yolanda D. (88 NY2d 790, 796 [1996]), the Court of Appeals held that a “person legally responsible” is a person who acts as “the functional equivalent of a parent in a familial or household setting.” Furthermore, determining whether a person has acted as a functional equivalent of a parent is a discretionary, fact intensive inquiry which will vary according to the particular circumstances of each case. (Id.) The Court of Appeals delineated specific factors to consider in determining whether a respondent meets the definition of a person legally responsible under section 1012 (g). The factors include, but are not limited to, the frequency and nature of the contact between the child and the respondent, the nature and extent of the control exercised by the respondent over the child’s environment, the duration of the respondent’s contact with the child, and the respondent’s relationship to the child’s parent. (Id.) The Court goes on to state that the care must be “analogous to parenting” and “should not be construed to include persons who assume fleeting or temporary care of a child such as a supervisor of a play-date or an overnight visitor.” (Id.)
The ACS caseworker, Ms. Means, testified that the subject child Destiny stated that she and Sierra had been friends for about three to five years, and that Sierra would come to her house after school “a lot” from November 2013 through January 2014, however Ms. Means did not know how many hours Sierra would spend at Destiny’s house, nor did she recall how many times per week Sierra came over or what days of the week she was at the house. Destiny further stated that Mr. H. picked her and her sister Emmallee up from school and that Sierra would be there with them. Destiny stated that when Sierra was over at her house, Mr. H. would sexually abuse both Destiny and Sierra in the bedroom. Furthermore, Ms. Means testified that Sierra’s grandmother would pick Sierra up from the H.’s home. Ms. Means also testified that the child Emmallee stated that Mr. H. played with Sierra and Destiny in her mother’s room.
*441 In considering the specific factors outlined in Yolanda D. as well as the body of appellate case law surrounding the issue of what evidence is sufficient to support a finding that an individual is a person legally responsible for a child’s care, the court cannot conclude that Mr. H. is a person legally responsible for a school friend of Destiny. For example, in Matter of Isaiah L. (Chris B.) (119 AD3d 797 [2d Dept 2014]), the Second Department deemed the mother’s paramour to be a person legally responsible in that he assumed parental responsibilities by purchasing food and feeding the child, sleeping in the same bed as the child and the mother and representing himself to the caseworker as the child’s parent. Similarly, in Matter of Angelo P. (Jose C.) (98 AD3d 908 [1st Dept 2012]), evidence that the mother’s paramour saw the child four times per week, acted as the functional equivalent of a parent by bathing, feeding, and changing the child’s diaper, and acting as a father figure to the child, was sufficient for a finding that the respondent was a person legally responsible. In Matter of Tyler MM. (Stephanie NN.) (82 AD3d 1374 [3d Dept 2011]), the record contained adequate evidence to sustain Family Court’s finding that the paramour was legally responsible for the children’s care in that he lived with the children for about a year, had daily contact with them, was often alone with the children, and cooked, cleaned and helped the children prepare for school. In Matter of Donell S. (Donell S.) (72 AD3d 1611 [4th Dept 2010]), the petitioner’s witnesses established that the father and mother were living together during the relevant time, and thus the father acted as the functional equivalent of a parent with respect to the mother’s older child, rendering him a person legally responsible.
The record before this court falls short of establishing that Mr. H. is a person legally responsible or functional equivalent of a parent for Sierra. The instant facts are wholly distinguishable from the above-cited cases where appellate courts found sufficient evidence to support a finding that the respondent was a person legally responsible for the child’s care under Family Court Act § 1012 (g).
In the instant matter, the frequency and duration of Mr. H.’s contact with the child has not been established. Mr. H. is not related to Sierra. Mr. H. did not reside in the same home as Sierra. Sierra did not regularly spend the night in the same home as Mr. H. The record is silent on whether Mr. H. provided food or money for Sierra, or whether he assisted Sierra with *442 homework. The court cannot infer that Mr. H. exercised any parental caretaking responsibilities over Sierra. The record is devoid of information concerning Mr. H.’s relationship with Sierra’s parent or caretaker, or whether there was even any arrangement made for Mr. H. to take Sierra back to his home after school. In fact, the record established that Mr. H. had no responsibility for transporting Sierra back to her own home since Sierra’s grandmother picked her up from Destiny’s home. At best, the caseworker’s testimony establishes that Mr. H. was a “supervisor of a play-date,” specifically an individual that Yolanda D. did not intend to capture under section 1012 (g). (88 NY2d at 796; see also Matter of Jasmine A., 18 AD3d 546 [2d Dept 2005] [finding that child’s adoptive brother was not a person legally responsible as he was not residing in the home with the child, and that during his visits to the home he did not assume any quasi-parental or supervisory role].)
Based on the record before the court, the court finds that the petitioner has failed to establish that Mr. H. is a person legally responsible for the child Sierra. Therefore, the out of court statements of Sierra constitute inadmissible hearsay which are not subject to the hearsay exception contained in Family Court Act § 1046 (a) (vi).
With regard to the petitioner’s argument that Sierra’s statements would corroborate Destiny’s out of court statements, it is true that section 1046 (a) (vi) states a broad and flexible rule for corroboration, and a child’s out of court statements can be corroborated by “[a]ny other evidence tending to support the reliability of the previous statements.” The Family Court also has considerable discretion in deciding whether the child’s out of court statements have been reliably corroborated. (Matter of Amber C. [Miguel C.], 104 AD3d 845 [2d Dept 2013] [finding child’s statements corroborated by testimony of an expert in clinical and forensic psychology who concluded that the child exhibited behavior indicative of sexual abuse]; Matter of Dezarae T. [Lee V.], 110 AD3d 1396 [3d Dept 2013] [stating that a relatively low degree of corroborative evidence is sufficient in abuse proceedings, however child’s repetition of allegations of abuse to multiple individuals is not sufficient to corroborate prior out of court statements].) However, in a fact-finding hearing under article 10, all evidence must still be competent. (Family Ct Act § 1046 [b] [iii].) In turn, all corroboration evidence must be competent, nonhearsay, relevant evidence. (See Matter of Nicole G. [Louis G.], 105 AD3d 956 [2d Dept 2013]; Matter of *443 Zachariah VV., 262 AD2d 719 [3d Dept 1999]; Matter of Linda K., 132 AD2d 149 [2d Dept 1987].)
Accordingly, the ACS caseworker will not be permitted to testify to this non-subject child’s out of court statements.
Nothing in this court’s decision precludes the petitioner from calling Sierra as a witness or from presenting any other competent corroborative evidence.

. Mr. H. is not the biological father of either Destiny or Emmallee.

. The “friend” of Destiny is not a subject of the article 10 petition.

. The court notes that the Second Department has consistently held that the out of court statements of siblings describing similar incidents of abuse may be used to cross-corroborate one another. (Matter of Jada A. [Robert W.], 116 AD3d 769 [2d Dept 2014]; Matter of Andrew W. [Randolph A.W.], 83 AD3d 727 [2d Dept 2011]; Matter of Tristan R., 63 AD3d 1075 [2d Dept 2009]; Matter of Joshua B., 28 AD3d 759 [2d Dept 2006]; Matter of Latisha W., 221 AD2d 645 [2d Dept 1995].) Notably, the siblings in these cited cases were also named as the subjects of the article 10 petitions.