================================================================
This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------

No. 30
In the Matter of Trenasia J.
(Anonymous).

Administration for Children's
Services,
            Respondent;
Frank J. (Anonymous),
            Appellant.
(And Three Other Proceedings.)


            Maxine H. Park, for appellant.
            Barbara H. Dildine, for the J. children.
            Kathy Chang Park, for respondent.
            Marcia Egger, for the child Brije D.
            Bronx Defenders et al., amici curiae.


MEMORANDUM:

        The order of the Appellate Division should be affirmed,

without costs.

        The primary issue in this appeal is whether appellant

Frank J. was a "person legally responsible" (PLR) as defined by

Family Court Act § 1012 (g) and our decision in Matter of Yolanda

- 1 -

D. (88 NY2d 790 [1996]).  We agree with the Appellate Division,
and disagree with the dissent, that the evidence was sufficient
to establish that Frank J. was a PLR for the subject child at the
relevant time.

Frank J. is the uncle of the subject child through
marriage, and the father of three children (the J Children).  In
February 2011, the Administration for Children's Services (ACS)
filed petitions against Frank J. alleging that according to
statements made by the subject child, Frank J. "forcibly
attempted to have sexual intercourse" with her "after entering
the bathroom while she was taking a shower" during an overnight
visit at Frank J.'s home on December 31, 2010.  The child, who
was 11 years old at the time of incident, alleged that while she
was taking a shower, Frank J. entered the bathroom and asked her
if she wanted to make $5, warning her against telling her mother.
The child alleged that Frank J. forcibly grabbed her by her hips,
pulled her towards him, and attempted to pull out his penis.  The
child then ran crying to her cousin's room, put on some clothes
and ran out of the house to a nearby supermarket where an
ambulance was called.

The Family Court Act defines a "respondent" in a child
protective proceeding as "any parent or other person legally
responsible for a child's care who is alleged to have abused or
neglected such child" (Family Court Act § 1012 [a]).  A person
legally responsible for a child is defined as

> "the child's custodian, guardian, [or] any
> other person responsible for the child's care
> at the relevant time.  Custodian may include
> any person continually or at regular
> intervals found in the same household as the
> child when the conduct of such person causes
> or contributes to the abuse or neglect of the
> child"

(Family Court Act § 1012 [g]).

Frank J. moved to dismiss the petition for want of jurisdiction, arguing that he was not a PLR because he was neither the guardian nor custodian of the child, and she was never a member of his household.  The attorney for the J Children supported Frank J.'s motion to dismiss.  After a hearing on the motion to dismiss, where the court heard testimony from the responding police officer and the child's mother, Family Court, Kings County, denied Frank J.'s motion to dismiss, stating that there was no "serious question that [Frank J.] is a [PLR] within . . . the meaning" of the statute.  The matter then proceeded to a fact-finding hearing, at which the subject child, the responding police officer, and Frank J. testified.  The child's testimony essentially tracked the allegations of the complaint, as did the testimony of the responding officer, who reported the child's version of the incident.  Frank J. denied the allegations, and testified that the child had become upset when he scolded her for eating in one of the bedrooms.  Upon conclusion of the testimony, the Family Court held that Frank J. abused the child "by committing an act of attempted sexual abuse in the [s]econd [d]egree" and found that, as a result, he had

derivatively neglected his own children.

The Appellate Division affirmed (Matter of Trenasia J., 107 AD3d 992). The court stated that "[c]ontrary to [Frank J.'s] contention, . . . Family Court correctly found him to be a [PLR] within the meaning of the Family Court Act" (107 AD3d at 993, citing Matter of Yolanda D., 88 NY2d 790, 793 [1996], Matter of Christopher W., 299 AD2d 268 [1st Dept 2002]). The court determined that ACS established by a preponderance of the evidence that Frank J. abused the child. Additionally, the court stated that the finding of derivative neglect was also proper because Frank J.'s "attempt to sexually abuse his niece while his two young daughters were home, at a time when he was the sole adult present, evinced a flawed understanding of his duties as a parent and impaired parental judgment" (id. at 993-994). This Court granted Frank J.'s motion for leave to appeal.

Matter of Yolanda D. (88 NY2d 790 [1996]) is this Court's seminal decision on the factors to consider in determining who is a PLR under Family Court Act § 1012 (g). In that case we recognized

> "that parenting functions are not always
> performed by a parent but may be discharged
> by other persons, including custodians,
> guardians and paramours, who perform
> caretaking duties commonly associated with
> parents. Thus, the common thread running
> through the various categories of persons
> legally responsible for a child's care is
> that these persons serve as the functional
> equivalent of parents"

(id. at 795). We held that deciding whether "a particular person

has acted as the functional equivalent of a parent is a discretionary, fact-intensive inquiry which will vary according to the particular circumstances of each case" (id. at 796). We listed factors to be considered when determining who is a PLR, which include (1) "the frequency and nature of the contact," (2) "the nature and extent of the control exercised by the respondent over the child's environment," (3) "the duration of the respondent's contact with the child," and (4) "the respondent's relationship to the child's parents" (id.). This Court also stated that "article 10 should not be construed to include persons who assume fleeting or temporary care of a child such as a supervisor of a play-date or an overnight visitor or those persons who provide extended daily care of children in institutional settings, such as teachers" (id.).

Yolanda D. concerned whether a respondent uncle, who was alleged to have abused his 12-year-old niece during her visits to his Pennsylvania home, was a PLR. The uncle described the contact between him and his niece as six to seven visits during the summer of 1991, with three to four overnight visits. The uncle's girlfriend who lived in the house at the time stated that the niece spent two weekends a month during the summer at his home. The evidence indicated that the niece and her mother lived in New York and the niece's mother did not accompany her on these visits to Pennsylvania. Additionally, the uncle regularly visited his niece's home. Family Court and the Appellate

Division determined that the uncle was a PLR, and we agreed because the uncle was "regularly in the same household as [the child] during the relevant time, an environment he controlled, and he regarded his relationship with [the child] as close and familial" and further he permitted the child "to stay overnight in his home, [thereby] provid[ing] shelter, a traditional parental function, in an area geographically distant from the child's own household" (id. at 797).

Based on the evidence admitted during Frank J.'s hearing, there is record support for Family Court's affirmed finding of fact that Frank J. was a PLR under Family Court Act § 1012 (g) and Yolanda D.  With respect to "the frequency and nature of the contact," and "the duration of the respondent's contact with the child," under Yolanda D, the responding police officer testified without objection that the child informed her that she had been staying at Frank J.'s home for a week prior to the incident.  The child's mother testified that during the year before this incident, the child had visited Frank J.'s home eight or nine times and four of those occasions were overnight visits.  There was also testimony that Frank J. and the child interacted at family functions such as family reunions, holidays and birthday parties.  Thus, the total contacts between Frank J. and the child were significant.

As to "the nature and extent of the control exercised by the respondent over the child's environment," this incident

occurred in Frank J.'s home during an overnight visit, and he was the only adult present at the time.  Additionally, Family Court noted in its oral decision denying Frank J.'s motion to dismiss that the child's mother "testified that she expected her sister to care for the child, but if the sister wasn't there then [Frank J.] was expected to care for the child."  Finally, in considering "respondent's relationship to the child's parents," Frank J. is related to the child through marriage, as his wife's sister is the child's mother.  Although the existence of a familial relationship is not dispositive, it is appropriately considered in determining whether a respondent is a PLR.

Applying the Yolanda D. factors to these facts -- given the nature and length of the contacts between Frank J. and the child, his control over the child's environment and their familial relationship -- record support exists for the lower courts' determination that Frank J. is a PLR under Family Court Act § 1012 (g) and for the determination of derivative neglect.

Matter of Trenasia J.

No. 30

RIVERA, J.(concurring in part and dissenting in part):

In order for an individual to be a "person legally responsible for a child's care" ("PLR") under Family Court Act § 1012 (g), and thus a proper respondent in a child protective proceeding, such person must serve "as the functional equivalent of a parent in a familial or household setting" (Matter of Yolanda D., 88 NY2d 790, 796 [1996]).  As interpreted by this Court, section 1012 (g) does not extend to "persons who assume fleeting or temporary care of a child" (id.).  Given the need in these cases for judicial findings regarding personal relationships and interactions, as well as an assessment of the parental functions undertaken by nonparents, a proper determination of whether a respondent's actions are "analogous to parenting" requires a well-developed factual record of the nature and extent of a respondent's caretaker responsibilities.

Unlike the majority I consider the record in this appeal insufficient, as a matter of law, to support the Family Court's determination that Frank J. is a PLR because the record is devoid of facts regarding the nature and duration of Frank J.'s caretaker responsibilities, especially given the mother's testimony that Frank J.'s wife, the child's aunt, was in charge

- 1 -

of the child's care when the mother was absent.  Moreover, the record suggests that the Family Court relied disproportionately on some undefined normative-based assumption about Frank J. and the child's familial bond, in contravention of this Court's interpretation of the statute. I therefore dissent.

In <u>Yolanda D.</u> this Court set forth a non-exhaustive list of factors that a court should consider as part of its "discretionary, fact-intensive inquiry" into whether a person is a functional equivalent of a parent (<u>id.</u>).  The Court identified as relevant "the frequency and nature of the contact between the child and respondent, the nature and extent of the control exercised by the respondent over the child's environment, the duration of the respondent's contact with the child, and the respondent's relationship to the child's parent(s)" (<u>id.</u>).  These factors "illustrate some of the salient considerations in making an appropriate determination" (<u>id.</u>).  No one factor is dispositive, but rather each is to be accorded a weight appropriate to the "circumstances of the particular case," mindful that the "purpose of the inquiry will remain constant" (<u>id.</u>).  Essentially, they embody this Court's recognition that the focus is on the person's responsibility for "caretaking duties commonly associated with parents" and the person's connection to the child (<u>id.</u> at 795).

Careful consideration of the record herein, with an eye to the "purpose of the inquiry" attendant to a section 1012 (g)

PLR assessment, establishes that it does not support a determination that Frank J. is a PLR within the meaning of section 1012 (g). The majority concludes otherwise, and, applying the factors set forth in Yolanda D., relies, in part, on the sum total of the contacts between Frank J. and the child, characterizing them as "significant." However, the record is simply not clear as to the contacts between Frank J. and the child. Significantly, the majority's analysis fails to consider Frank J.'s actual responsibilities for the child's care during any of the visits to the home, or the nature of the interactions during the times when they are supposedly in contact. Yet, these details are essential to the section 1012 (g) "fact-intensive inquiry." Of course, it is simply not possible to assess the relevant facts because the record here is best characterized by its sheer vagueness regarding the contacts and Frank J.'s role. Indeed, it lacks critical details as to the nature and extent of Frank J.'s contacts and responsibilities over the child necessary to elevate him to "the functional equivalent of a parent" (id. at 796).

As is the case in this appeal, Yolanda D. involved an uncle/niece relationship. However, unlike the facts that established the uncle's parenting role and close relationship with his niece in Yolanda D., the record here lacks evidence of a similar bond or of Frank J.'s parental responsibilities during the few times that he interacted with the child. In Yolanda D.

the niece visited her uncle's apartment unaccompanied six or seven times, approximately every other week, during the summer in which the abuse occurred. Here, Frank J. had some unspecified amount of contact with the child a total of eight or nine days across an entire year, which included traditional family gatherings like cookouts and birthday parties.[1] While in both Yolanda D. and the instant appeal the children stayed overnight approximately four times, in Yolanda D. those visits were during a concentrated period of the summer. Whereas here, the mother testified that the child stayed overnight three times in February the year preceding the abuse and possibly on Thanksgiving Day in November. Thus, the child went almost a year without visiting her uncle and aunt's home. Moreover, in Yolanda D. the visits were planned specifically to allow the niece to spend time with the uncle. Here, the mother testified that the child went to the home of the uncle and aunt to visit her cousins, Frank J. and the aunt's children. When asked why her daughter went to the home, the mother did not even mention Frank J. Instead, she said her

---

[1]The majority appears to consider Officer Alonso's hearsay statement that the child told her she was staying at Frank J.'s house one week (Maj Op at 6). I find it unnecessary to consider whether Frank J.'s challenge to the officer's testimony is preserved for our review because even taking into consideration the officer's statement, the child's mother contradicted the hearsay when she testified that the child was staying only one night. Also, the mother testified the hearsay was incorrect: "[the child] hasn't spent the night over [at Frank J.'s home] like a week straight like it was said." Moreover, Family Court's ultimate decision that Frank J. was a PLR neither mentions nor relies on this hearsay.

daughter visited "because she loves my sister and her cousins, she wants to play with her cousins."  Thus, far from establishing that Frank J. and the child interacted in a parent relationship, and that they were "pretty close," as was the case of the uncle and niece in Yolanda D., here the evidence establishes that Frank J. and the child had limited contact, usually in the company of other family members, and that the child visited the home because she wanted to be with her aunt and cousins.

Moreover, Frank J., unlike the uncle in Yolanda D., was not the person primarily responsible for the child during her visits to the household.  According to the mother's testimony, it was her sister, Frank J.'s wife and the child's aunt, who was responsible for the child when she visited Frank J.'s home.  The mother expected that on those occasions when the aunt was not present Frank J. would care for the child.  Meaning that the mother left the care of the child by default to Frank J. only when the aunt was unavailable.  However, there is no factual rendition -- from the mother or anyone else -- establishing the frequency and nature of Frank J.'s contact with the child during those times when the aunt was absent.  The record thus establishes that so long as the aunt was present, Frank J. did not have the type of control and responsibility for the child that was crucial to the PLR finding in Yolanda D..

Additionally, Family Court appears to have placed undue significance on what it found to be a "normal uncle/niece

relationship" between Frank J. and the child.  However, Family Court failed to define or explain what it meant by "normal."  In any case, to the extent it relied on its own understanding of a normative-based assessment of what constitutes a family, that was error, and in contravention of the statutory intent.  As this Court made clear in Yolanda D., section 1012 (g) "embod[ies] legislative recognition of the reality that parenting functions are not always performed by a parent but may be discharged by other persons" (id. at 795).  The Court specifically identified persons who are not "family" in the traditional sense -- such as paramours -- as those "who perform caretaking duties commonly associated with parents" (id. at 794-795 [noting that "custodians, guardians and paramours" may discharge parenting functions and the legislative history demonstrates an intent to include persons "without legal custody of the child() within the jurisdiction of the family court"], citing Letter from sponsor of an amendment to section 1012 [g] to the Governor, Bill Jacket, L 1972 ch 1015).  Moreover, "respondent's relationship to the child's parent(s)" is but one variable for the court's consideration in its PLR determination, and is by no means outcome determinative.  The application of those factors to the facts in Yolanda D. is instructive, for if the existence of a familial relationship were enough to satisfy the statute, there would have been no need to discuss the frequency of visits and the close relationship between the uncle and child in that case.

Without factual information as to the nature and frequency of Frank J.'s contact with the child, the record is insufficient to establish that he served as a functional equivalent of a parent in a household setting (id. at 795). Rather, Frank J.'s relationship to the child is more akin to that of a "person[] who assume[s] fleeting or temporary care of a child" (id. at 796). Therefore, the Appellate Division erroneously affirmed the finding that Frank J. was a person legally responsible for the child's care within the meaning of section 1012 (g), and I would reverse as related to the petition alleging attempted abuse of the child.

With respect to the petitions concerning Frank J.'s three children, I agree with the majority that the Appellate Division properly affirmed Family Court's derivative neglect determination. An Article 10 child protective proceeding to determine abuse or neglect "may be originated by a child protective agency" (Family Court Act § 1031 [d]), at which the agency must establish by a preponderance of the evidence that respondent derivatively neglected respondent's own children (see Matter of Tammie Z., 66 NY2d 1, 3 [1985]). At such proceeding, "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child" (Family Court Act § 1046 [A] [i]). A "child" is defined as "any person or persons alleged to have been abused or neglected" (Family Court Act § 1012 [b]).

Here, the Administration for Children's Services filed petitions, in its role as child protective agency, against Frank J., alleging he derivatively neglected his children, ages 11, 10 and 2, based on his abuse of his niece while his daughters were present in the home.  As the father of the three children named in the petitions, Frank J. clearly falls within the statutory definition of a "respondent" for purposes of this child protective proceeding (Family Court Act § 1012 [a] ["'(r)espondent' includes any parent"]).  The fact that Frank J. does not meet the statutory definition of a PLR concerning the care of another child does not foreclose the agency from proceeding against him with respect to his own children (see Matter of Jamel T., 120 AD3d 504, 505 [2d Dept 2014] [holding that allegations of abuse against child who is not "subject of ... proceedings may form the basis of a finding that (respondent) derivatively neglected children"]; Matter of Kennedie M., 89 AD3d 1544, 1545 [4th Dept 2011] ["court may make a finding of derivative neglect even if the child who was sexually abused is not the subject of the neglect petition"]; Matter of Kole HH., 61 AD3d 1049, 1052-1053 [3d Dept 2009] [holding that although respondent did not qualify as a PLR with respect to the victim of abuse, that abuse could still form the basis of a derivative neglect finding as against respondent's own children]).  Thus, the agency was within its authority to present evidence of Frank J.'s abuse of the child in order to meet its burden.

The evidence at the hearing established Frank J.'s attempted abuse, described by the child herself.  Moreover, it is undisputed that the acts occurred while two of Frank J.'s children were home, within earshot of one of his daughters.  On this record, the evidence is sufficient to support a finding of derivative neglect.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, without costs, in a memorandum.  Judges Read, Pigott, Abdus-Salaam and Fahey concur.  Judge Rivera dissents in part in an opinion in which Chief Judge Lippman and Judge Stein concur.

Decided May 5, 2015