Matter of Elijah AA. (Alexander AA.) (2023 NY Slip Op 02812)

Matter of Elijah AA. (Alexander AA.)

2023 NY Slip Op 02812

Decided on May 25, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 25, 2023

533771
[*1]In the Matter of Elijah AA., Alleged to be a Neglected Child. Otsego County Department of Social Services, Respondent; Alexander AA., Appellant.

Calendar Date:March 28, 2023

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
Denise J.B. Hollis, County Attorney, Cooperstown (Corrie A. Damulis of counsel), for respondent.
Christine E. Nicolella, Delanson, attorney for the child.

Clark, J.
Appeal from an order of the Family Court of Otsego County (Michael F. Getman, J.), entered July 8, 2021, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent and Jacquelynne BB. (hereinafter the mother) are the biological parents of a child (born in 2019). Respondent and the mother were involved in a short-term romantic relationship that ended in May 2019. The child was born in October 2019 and tested positive for drugs. Petitioner immediately commenced this neglect proceeding against respondent and the mother, and the child was placed in petitioner's custody and care. Approximately a week later, petitioner amended the neglect petition, making additional allegations against the mother.[FN1] Following a hearing, Family Court found that respondent neglected the child, and respondent appeals.
Respondent argues that Family Court erred in finding him to be a person legally responsible for the child's care and, regardless, that the evidence proffered was insufficient to support a finding of neglect against him. Petitioner, as the party seeking to prove that respondent neglected the child, bore the burden of establishing, by a preponderance of the evidence, that the child's "physical, mental or emotional condition ha[d] been impaired or [was] in imminent danger of becoming impaired as a result of the failure of [the child's] parent or other person legally responsible for [the child's] care to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship" (Family Ct Act § 1012 [f] [i] [B]; see Family Ct Act § 1046 [b] [i]). A person legally responsible "includes the child's custodian, guardian, [or] any other person responsible for the child's care at the relevant time" (Family Ct Act § 1012 [g]). "A person is a proper respondent in a[ Family Ct Act] article 10 proceeding as an 'other person legally responsible for the child's care' if that person acts as the functional equivalent of a parent in a familial or household setting" (Matter of Yolanda D., 88 NY2d 790, 796 [1996]). Such an inquiry is discretionary and fact-intensive; a "person legally responsible" is a broad-encompassing category, and it "include[s] paramours or other nonparental persons who perform childcare duties which correspond with the traditional parent/child relationships" (Matter of Nathaniel TT., 265 AD2d 611, 612 [3d Dept 1999], lv denied 94 NY2d 757 [1999]; see Matter of Yolanda D., 88 NY2d at 794-796; Matter of Heyden Y. [Miranda W.], 119 AD3d 1012, 1012 [3d Dept 2014]). We accord great deference to Family Court's factual findings and credibility determinations, which will be upheld unless they lack a sound and substantial basis in the record (see Matter of Andreija N. [Michael N.-Tiffany O.], 206 AD3d 1081, 1084 [3d Dept 2022]).
Although this case presents a close call, there was a sound and substantial basis in the record to find that respondent [*2]was a person legally responsible for the child's care. Respondent credibly testified that he knew he was "possibly the father" and that, despite his relationship with the mother ending, he continued to assist her during her pregnancy by driving her to some of her prenatal appointments, to pick up medications and to run other errands. Further, respondent admitted that, despite any doubts he had about his biological connection to the child, he planned to care for the child upon the child's birth, and he would later seek to conduct paternity testing. As such conduct was consistent with a person behaving as the functional equivalent of a parent, respondent was properly held to be a person legally responsible for the child's care at the relevant time (see Family Ct Act § 1012 [g]; cf. Matter of Alexandria X. [Ronald X.], 80 AD3d 1096, 1098 [3d Dept 2011]), particularly as his paternity was eventually established.[FN2]
We note that a determination of whether respondent neglected the child was complicated by the fact that no DNA analysis was performed to establish paternity until late 2020, over a year after the child's birth. During petitioner's first meeting with respondent in June/July 2019, months prior to the child's birth, respondent reported that he wanted a paternity test conducted. The caseworker admitted that, during that first meeting, respondent offered his mother as a custodial resource for the child, should he be unable to care for the child himself. The caseworker was also aware that respondent's mother had previously been a custodial resource for respondent's older child. Upon respondent's incarceration in August 2019 — about two months before the child's birth — petitioner reached out to respondent's mother, who explained that she was unable to care for the subject child but asserted that other relatives would be willing to do so, if paternity were established.[FN3] The caseworker then admitted that no one met with respondent to inform him of his mother's unavailability or to ask about other familial resources. The record fails to explain why paternity testing was not completed more expeditiously, especially given that confirming paternity would have expanded the child's available familial resources. It is worth noting that petitioner had an affirmative obligation "to conduct an immediate investigation" into familial resources (Family Ct Act § 1017 [1] [a]; see Matter of Richard HH. v Saratoga County Dept. of Social Servs., 163 AD3d 1082, 1083-1085 [3d Dept 2018], lv denied 32 NY3d 911 [2018]). Petitioner failed to do so, choosing instead to bring a neglect petition against respondent.
At the fact-finding hearing, the record further reflects that most of the proof upon which petitioner relied was predicated on hearsay. Although no objections were raised, the caseworker testified to the mother's statements regarding paternity and to respondent's mother's statements. In the end, petitioner's proof failed to establish how respondent's plan to [*3]have his mother care for the child fell below the "minimum degree of care" or how it impaired the child or placed him in imminent danger of becoming impaired (Family Ct Act § 1012 [f] [i]). Petitioner's proof seemed to be predicated solely on respondent's incarceration, which cannot alone form the basis for a neglect finding (see Matter of Larenzo SS., 289 AD2d 880, 883 [3d Dept 2001]; Matter of Anthony B., 236 AD2d 817, 818 [4th Dept 1997]; compare Matter of Annaleigh X. [Ashley Y.], 205 AD3d 1109, 1112-1113 [3d Dept 2022]). Due to the accumulation of errors by petitioner, and the insufficiency of its proof, we find that petitioner failed to establish that respondent neglected the subject child (see Matter of Larenzo SS., 289 AD2d at 882-883). As such, Family Court should have dismissed the amended petition.
Garry, P.J., Reynolds Fitzgerald and Ceresia, JJ., concur.
Aarons, J. (concurring).
I respectfully concur. I agree with the majority that the amended petition alleging that respondent neglected the child should have been dismissed. I write separately because I do not join that part of the majority's decision concluding, as Family Court did, that respondent was a person legally responsible for the child within the meaning of Family Ct Act § 1012 (g).
The majority aptly acknowledges that whether Family Court correctly found that respondent met the definition of a person legally responsible for the child presents a "close call." In support of the court's finding, respondent believed that he was the child's father, Jacquelynne BB., the child's mother, held him out as such and he expressed a desire to assume responsibility over the child. Respondent, however, makes a compelling argument to the contrary. He notes that his paternity was not established until after the neglect proceeding was commenced and that his mere actions of taking Jacquelynne BB. to prenatal appointments or the store prior to the child's birth do not show that he was "the functional equivalent of a parent in a household setting" (Matter of Faith GG., 179 AD2d 901, 901 [3d Dept 1992], lv denied 80 NY2d 752 [1992]).
Notwithstanding the foregoing, in my view, it is unnecessary to resolve at this time the issue of whether respondent was a person legally responsible for the child. To that end, even assuming that respondent was so, for reasons stated by the majority, petitioner did not satisfy its burden of proving by a preponderance of the evidence that respondent neglected the child.
ORDERED that the order is reversed, on the law, without costs, and amended petition dismissed.

Footnotes

Footnote 1: Prior to the hearing, the mother admitted to the allegations of neglect insofar as asserted against her and the matter was deemed adjudicated with respect thereto.

Footnote 2: Throughout the proceedings, respondent argued that he was not a proper respondent as he was neither a "parent" nor a "person legally responsible for a child's care" (Family Ct Act § 1012 [a]). Because we uphold Family Court's finding, thereby satisfying the threshold requirement that a respondent in a Family Ct Act article 10 proceeding be either a "parent or other person legally responsible for a child's care," we need not address whether respondent, under these circumstances, meets the definition of a "parent" (Family Ct Act § 1012 [a] [emphasis added]; see Family Ct Act § 1012 [l]).

Footnote 3: According to respondent, he also provided those additional resources to the caseworker during their June/July 2019 meeting.