■ In the Matter of BRENT HH. and Others, Children Alleged to be Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BRETT JJ. et al., Appellants. [765 NYS2d 671] —Spain, J. Appeal from an order of the Family Court of Otsego County (Coccoma, J.), entered October 21, 2002, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondents' children to be neglected.

The children who are the subjects of this neglect proceeding are Melissa II. (born in 1993), her brother, Steven II. (born in 1990), and their cousin, Brent HH. (born in 1990). Brent is the grandson of respondent Laura KK. (hereinafter the grandmother) and resides with his mother, the grandmother's daughter. Melissa and Steven reside with the grandmother, who is their legal guardian, and her boyfriend, respondent Brett JJ. (hereinafter the boyfriend).

The following facts are largely undisputed. On June 26, 2001, Brent and his mother came to visit the grandmother's home to go swimming. The grandmother and Melissa were present, and later that afternoon the boyfriend arrived with Steven. At some point thereafter, Steven reported that Brent had asked Melissa to expose herself. The grandmother initially took control of the situation; after questioning Melissa about the incident and sending her to her room, the grandmother, along with Brent's mother, began questioning Brent. The boyfriend, having already spoken to Melissa, then entered the room and began to question Brent as well, whereupon Brent fled from the house. The three adults chased after him, with the boyfriend overtaking the women and reaching the boy first, grabbing Brent by the neck and arm. When Brent's mother screamed at the boyfriend demanding that he release Brent, the boyfriend either pushed or threw Brent away from him, causing Brent to fall into a ditch. A fist fight between the boyfriend and Brent's mother ensued, during which she sustained multiple contusions. When the grandmother intervened, the boyfriend went back into the house, and Brent's mother ran to a neighbor's house where she called an ambulance. The grandmother then assisted Brent, who had sustained two fractures to his right arm, out of the ditch. The boyfriend was later arrested for assault in the third degree and endangering the welfare of a child in connection with the incident.

Petitioner commenced this proceeding against respondents alleging that they had abused and neglected all three children. Following a fact-finding hearing, Family Court found that all three children were neglected by respondents. Respondents appeal.

First, we address the boyfriend's contention that the determination that he neglected Brent cannot be sustained because there is insufficient record evidence that he is a "[p]erson legally responsible" for Brent's care within the meaning of the Family Ct Act (Family Ct Act § 1012 [g]). "A person is a proper respondent in [a Family Ct Act] article 10 proceeding as an 'other person legally responsible for the child's care' if that person acts as the functional equivalent of a parent in a familial or household setting" (*Matter of Yolanda D.*, 88 NY2d 790, 796 [1996] [citation omitted]).

"Determining whether a particular person has acted as the functional equivalent of a parent is a discretionary, fact-intensive inquiry which will vary according to the particular circumstances of each case. Factors such as the frequency and nature of the contact between the child and respondent, the nature and extent of the control exercised by the respondent over the child's environment, the duration of the respondent's contact with the child, and the respondent's relationship to the child's parent(s) are some of the variables which should be considered and weighed by a court in determining whether a respondent fits within the catch-all category of [Family Ct Act § ] 1012 (g)" (*id.* at 796).

Applying these factors to the evidence in this case, we find insufficient proof to support a finding that the boyfriend was a person legally responsible for Brent's care. Brent did not reside with respondents and, while regularly present at their house during the day, he was always accompanied by his mother. On limited occasions, Brent's mother would run errands and leave Brent in the grandmother's charge, but never while the boyfriend was at home. The evidence that Brent's mother is disabled—i.e., her testimony that she suffers from vision and memory impairment and unspecified psychological disorders—and is frequently present at the grandmother's home is, without more, insufficient to support a finding that the grandmother's boyfriend had assumed a parental role with respect to her son. While a person can be found legally responsible for a child who does not reside in the same household, Family Ct Act "article 10 should not be construed to include persons who assume fleeting or temporary care of a child" (*id.* at 796). The evidence here demonstrates only that the boyfriend resided

with and had a long-term relationship with the grandmother and that, on this single occasion, he attempted to take charge of disciplining the child. Without evidence that the boyfriend rendered any care for this child or otherwise assumed a parental role, we cannot sustain the finding that he was acting as the functional equivalent of the child's parent at the time of the incident in question (*see Matter of Austin JJ.*, 232 AD2d 736, 738 [1996]; *Matter of Anthony YY.*, 202 AD2d 740, 741 [1994]; *cf. Matter of Nichole SS.*, 296 AD2d 618, 618-619 [2002]; *Matter of Nathaniel TT.*, 265 AD2d 611, 613 [1999], *lv denied* 94 NY2d 757 [1999]).

Nor can the finding that the grandmother neglected Brent be sustained on this record. Assuming, without deciding, that the grandmother was a person legally responsible for Brent, the record does not support a finding of neglect. Family Court premised its finding of neglect with respect to the grandmother on her conduct postdating the June 26, 2001 altercation. Specifically, the court held that the grandmother did not take adequate steps after that incident to protect her grandchildren from the boyfriend, finding that she did not feel that the boyfriend's behavior warranted any subsequent intervention. However, because there is a dearth of evidence that Brent was ever present at the grandmother's home or otherwise in the boyfriend's presence following the June 26, 2001 incident, the conclusion that the grandmother failed to protect Brent cannot be based on her failure to protect him from the boyfriend. As no other findings support the conclusion that the grandmother neglected Brent, that charge should have been dismissed against her.

We now turn to the findings that respondents neglected Melissa and Steven. Neither respondent denies legal responsibility for Melissa and Steven but, instead, they contend that there was insufficient evidence of neglect. "A finding of derivative neglect may be made where [a] respondent's conduct demonstrates such a flawed understanding of parental duty to protect children from harm so as to create a substantial risk of harm for any child in his or her care" (*Matter of Melissa L.*, 276 AD2d 856, 857 [2000], *lv denied* 96 NY2d 702 [2001] [citations omitted]). Here, ample evidence supports Family Court's findings that the boyfriend lost control of himself after he chased Brent from the house, seriously injuring Brent and punching and kicking Brent's mother—who the boyfriend outweighed by over 100 pounds—stopping only when the grandmother pulled him away. This conduct, when coupled with evidence that Steven was a witness and Melissa a

potential witness to the boyfriend's violent actions, exhibits a failure by the boyfriend to appreciate or protect the children under his care from the substantial risk of harm to them that can result from witnessing violent behavior (*see Matter of Nichole SS., supra* at 619; *Matter of Melissa L., supra* at 857-858; *cf. Matter of Larenzo SS.,* 289 AD2d 880, 882 [2001]; *Matter of Daniella HH.,* 236 AD2d 715, 716 [1997]).

Likewise, we will not disturb Family Court's determination that the grandmother neglected Steven and Melissa. After observing the boyfriend break her grandson's arm and engage in a fist fight with her daughter, the grandmother nevertheless minimized the boyfriend's conduct. Despite her awareness of the boyfriend's violent behavior, the grandmother took no steps to protect Steven and Melissa from exposure to further violence and flatly stated that she did not see any need for services or other steps to modify the boyfriend's behavior. We deem these facts sufficient to support Family Court's determination that the grandmother neglected Steven and Melissa (*see Matter of Kathleen GG. v Kenneth II.,* 254 AD2d 538, 540 [1998]; *Matter of Kim HH.,* 239 AD2d 717, 719 [1997]).

Mercure, J.P., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as adjudicated Brent HH. to be a neglected child by respondents; petition dismissed to that extent; and as so modified, affirmed.