■ In the Matter of XAVIER II. and Others, Children Alleged to be Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ANNA JJ., Appellant, et al., Respondent. [872 NYS2d 561]—

Rose, J. Appeals (1) from an order of the Family Court of Broome County (Connerton, J.), entered July 26, 2006 which, in a proceeding pursuant to Family Ct Act article 10, temporarily removed Xavier II. from respondents' home, and (2) from an order of said court, entered June 6, 2007, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the children of respondent Anna JJ. to be neglected.

Respondent Anna JJ. (hereinafter the mother) has three children (born in 2003, 2005 and 2006), the two youngest of whom were fathered by her paramour, respondent Clyde II. Alleging that ongoing domestic violence and untreated substance abuse in the home of this couple presented an imminent risk of harm, petitioner sought temporary removal of the youngest child immediately after his birth in July 2006. Family Court granted petitioner's application and, following a hearing on the

subsequent neglect petition, determined all three children to be neglected. The mother's appeal of the temporary order of removal has been rendered moot by Family Court's determination of neglect, and we now affirm that later determination.

A finding of neglect will be sustained if petitioner demonstrated, by a preponderance of evidence, that the child's physical, mental or emotional condition was harmed or is in imminent danger of such harm as a result of the parent's failure to exercise a minimum degree of care (*see* Family Ct Act § 1012 [f] [i] [B]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *Matter of Aiden L.*, 47 AD3d 1089, 1090 [2008]; *Matter of Paul U.*, 12 AD3d 969, 970 [2004]). Actual impairment or injury is not required, but only that it be "near or impending" (*Nicholson v Scoppetta*, 3 NY3d at 369; *see Matter of John QQ.*, 19 AD3d 754, 756 [2005]; *Matter of Markus MM.*, 17 AD3d 747, 748 [2005]). "Such a threat may well be found to have resulted from a single incident or circumstance" (*Matter of Aiden L.*, 47 AD3d at 1090 [citations omitted]; *see Matter of Michael WW.*, 20 AD3d 609, 611-612 [2005]; *Matter of Jerrica J.*, 2 AD3d 1161, 1163 [2003]; *Matter of Victoria CC.*, 256 AD2d 931, 932 [1998]).

The evidence here established that, in August 2005, the six-foot-tall, 280-pound paramour flew into a rage in a hospital parking lot, grabbed the mother by the neck, pulled her hair and covered her mouth while she was holding her oldest child, who was then 2½ years old. When the police arrived, the paramour combatively yelled and cursed at them, dented a police car door and was subdued only by the use of pepper spray. The child later reported to a caseworker that the paramour had scared her and had been "mean" to her mother. The paramour admitted that he had been "out of control" during the incident, but he also asserted that the mother previously had tried to stab him and burned him with an iron. Although petitioner obtained a no-contact order of protection for the mother and children against the paramour, the mother had it modified to prohibit only harassment so that she and the children could be with him. Petitioner then implemented a safety plan for the two children to live with the parents' respective grandmothers and recommended various services, including domestic violence counseling, for the parents. Instead of availing themselves of the counseling, the mother punched the paramour in the face in January 2006 after she had become pregnant with the youngest child, they resumed living together in March 2006 and, later that month, the mother had the paramour arrested. She then obtained his release from jail two days later by signing a written statement that her written complaint against him had been

false. In addition, the record shows that the mother has a history of abusing cocaine and marihuana, and that she had used marihuana, been discharged from parenting classes for absenteeism and sought no prenatal care while pregnant with the youngest child.

Inasmuch as the evidence failed to show that the parents' domestic violence issues have been adequately addressed, and in light of the mother's inability to recognize the imminent threat that the paramour poses to her children (*see Matter of Aiden L.*, 47 AD3d at 1090-1091), there is a sound and substantial basis in the record supporting Family Court's finding that the children were at imminent risk of impairment as a result of the mother's failure to exercise a minimum degree of care (*see Matter of Paul U.*, 12 AD3d at 971).

Peters, J.P., Lahtinen, Kavanagh and Stein, JJ., concur. Ordered that the appeal from the order entered July 26, 2006 is dismissed, as moot, without costs. Ordered that the order entered June 6, 2007 is affirmed, without costs.