■ In the Matter of KATHLEEN NN., Alleged to be a Neglected Child. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Appellant; DENNIS NN., Respondent; ATTORNEY FOR THE CHILD, Appellant. (Proceeding No. 1.) In the Matter of KATHLEEN NN., Alleged to be a Neglected Child. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Appellant; JUSTIN EE., Respondent; ATTORNEY FOR THE CHILD, Appellant. (Proceeding No. 2.) In the Matter of KATHLEEN NN., Alleged to be a Neglected Child. SULLIVAN COUNTY DEPARTMENT OF FAMILY SERVICES, Appellant; ANGELICA FF., Respondent; ATTORNEY FOR THE CHILD, Appellant. (Proceeding No. 3.) [62 NYS3d 587]—

Garry, J.P. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered March 10, 2016, which dismissed petitioner's applications, in three proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.

Respondent Dennis NN. (hereinafter the father) and respondent Angelica FF. (hereinafter the mother) are the parents of the subject child (born in 2015). In July 2015, the father and the mother's boyfriend, respondent Justin EE. (hereinafter the boyfriend), were involved in a physical altercation while the father was holding the child. As a result, petitioner commenced separate proceedings pursuant to Family Ct Act article 10 against the father and the boyfriend, alleging that each of them had neglected the child. Petitioner also commenced a neglect proceeding against the mother after learning that she had failed to comply with a safety plan recommending that she keep the boyfriend away from the child. After a fact-finding hearing, Family Court dismissed all three petitions. Petitioner and the attorney for the child appeal.

The witnesses at the fact-finding hearing included two of petitioner's caseworkers, the mother, the child's maternal grandmother and a police officer.[1] Taken together, their testimony established that the mother, the boyfriend, the grandmother and the child, who was then five months old, were at a pediatrician's office awaiting a scheduled well-baby visit when the father arrived unexpectedly, "grabbed" the child from the mother's arms and announced that he was taking the child. The father then attempted to take the child's possessions from the grandmother. Still holding the child, the father encountered the boyfriend in a doorway and pushed or bumped the boyfriend aside. The boyfriend pushed back, and the grandmother followed as the boyfriend and the father went outside. Near the door, the father "opened his arms and just let [the child] go," dropping her into a bush beside a concrete sidewalk. The bush slowed the child's fall, allowing the grandmother to catch her "before she fell head first into the concrete." The father and the boyfriend began to physically struggle with each other.[2] According to the grandmother and a police officer who was called to the scene, the child was "[s]creaming," red in the face, and "obviously very distraught," but sustained no injuries beyond minor scrapes or scratches on her head and did not require medical attention.

---

1. The father and the boyfriend did not testify.
2. The testimony was unclear as to whether the physical altercation began before or after the father dropped the child.

One of petitioner's caseworkers received a child protective report about the incident and spoke twice with the mother and the boyfriend within a few days after it occurred. About five days after the incident, the caseworker learned about prior indicated child protective reports against the boyfriend that pertained to other children, including an incident that had involved significant physical injury to a two-year-old child. The caseworker met again with the mother and the boyfriend, and they agreed to a safety plan providing that the boyfriend would not be around the child. One day later, the mother permitted the boyfriend to care for the child alone. The boyfriend was there when the caseworker visited the mother's home about one week after that; a second caseworker visited days later and again found him in the home.

The mother testified that she and the child had moved in with the boyfriend on the day after the fight occurred. She claimed that she had not understood that the safety plan required her to make the boyfriend stay away from the child until that was explained by the second caseworker, who advised her that there would be court proceedings if he remained. That evening, the boyfriend left the home and did not return. The mother testified that she had not been concerned about permitting the boyfriend to be near the child because he had always behaved appropriately; she believed that the boyfriend was protecting the child during the fight with the father, and that the prior incident in which he had injured a child had been accidental. She stated that she and the boyfriend had complied with the safety plan after the boyfriend left her home, and that he had not since been in the child's presence.

To prove neglect, petitioner was required to establish by a preponderance of the evidence that the child's "physical, mental or emotional condition [was] impaired or [was] in imminent danger of becoming impaired as a result of the failure of [her] parent or other person legally responsible for [her] care to exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i]; see Family Ct Act § 1046 [b] [i]). In dismissing the petition against the father, Family Court found that, although his conduct was "extremely poor parental behavior," petitioner had failed to prove that the child was physically, emotionally or mentally impaired or placed in imminent danger of such impairment.

We disagree with this finding. The undisputed testimony established that the father arrived at the pediatrician's office without warning, forcibly seized the child from the mother, continued to hold the child while initiating an angry physical

confrontation, and then intentionally dropped the child. Physical injuries are not required to support a finding of neglect when a threat of imminent harm is posed (*see Matter of Daniel X. [Monica X.]*, 114 AD3d 1059, 1060 [2014]; *Matter of Shalyse WW.*, 63 AD3d 1193, 1195-1196 [2009], *lv denied* 13 NY3d 704 [2009]). "Such a threat may well be found to have resulted from a single incident or circumstance" (*Matter of Aiden L.*, 47 AD3d 1089, 1090 [2008] [citations omitted]; *accord Matter of Xavier II.*, 58 AD3d 898, 899 [2009]). Upon our review, we find that the father's conduct placed the child at imminent risk of harm and that he did not act as "a reasonable and prudent parent" (*Nicholson v Scoppetta*, 3 NY3d 357, 370 [2004]). Petitioner thus met its burden to prove by a preponderance of the evidence that the father neglected the child, and an adjudication to that effect should have been entered (*see Matter of Cameron O. [Scott O.]*, 147 AD3d 1257, 1258-1259 [2017]; *Matter of Emmett RR. [Scott RR.]*, 134 AD3d 1189, 1191 [2015]; *Matter of Heaven H. [Linda H.]*, 121 AD3d 1199, 1200-1201 [2014]).

As to the boyfriend, we agree with Family Court that petitioner did not meet its burden of proof. As a threshold requirement, it was necessary for petitioner to establish that the boyfriend was a "person legally responsible for [the child's] care" (Family Ct Act § 1012 [f] [i]). A person who is not a parent or legal guardian may be found to be a child's "custodian," and therefore legally responsible for the child's care, if he or she is "continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child" (Family Ct Act § 1012 [g]). Here, the mother testified that she and the boyfriend did not begin residing together until the day after the underlying altercation at the medical office. Petitioner submitted no evidence contradicting this testimony or otherwise establishing that the boyfriend was "the functional equivalent of a parent in a familial or household setting" at the time of the incident (*Matter of Yolanda D.*, 88 NY2d 790, 796 [1996]; *accord Matter of Brooke OO. [Lawrence OO.]*, 74 AD3d 1429, 1431 [2010], *lv denied* 15 NY3d 706 [2010]; *see Matter of Brent HH.*, 309 AD2d 1016, 1017-1018 [2003], *lv denied* 1 NY3d 506 [2004]). For this reason, neglect cannot be established against the boyfriend based upon his altercation with the father.

There was evidence that the boyfriend resided with the mother and shared in the child's care during the period of approximately 10 days in which he and the mother failed to comply with the safety plan (*see* Family Ct Act § 1012 [f] [i];

[g]). Assuming without deciding that the boyfriend was the child's custodian during this period, we are unpersuaded that his failure to comply with the safety plan, in the circumstances presented, was sufficient to meet petitioner's burden.

Petitioner's caseworker, who acknowledged that the safety plan was a recommendation rather than a requirement, testified that her concern about the boyfriend's presence in the home was based upon his involvement in the prior incidents that had led to child protective reports. However, the record evidence in this regard is notably sparse. The only information in the record about two of the incidents is that they involved fighting in the presence of children. As for the most serious matter, in which a child was injured, the caseworker reported that the boyfriend claimed that the incident was accidental. She had spoken with child protective workers in the county where this event had occurred, but had not determined whether their investigation had led to abuse or neglect proceedings. Notably, there was no testimony as to whether the information she acquired contradicted the boyfriend's claim that the injury was accidental. Although the caseworker also testified that she had learned from police that the boyfriend had been charged after the incident, she did not indicate the nature of the charges and could not remember the outcome. In view of the incomplete nature of this proof, together with the absence of evidence that the boyfriend had harmed the subject child or placed her at risk of harm during his relatively brief residence with the mother, as well as the uncontradicted evidence of his ultimate compliance with the safety plan, we find that petitioner did not prove by a preponderance of the evidence that the child was neglected by the boyfriend while he was legally responsible for her care (*see Matter of Shannon ZZ.*, 8 AD3d 699, 701 [2004]; *Matter of Anthony PP.*, 291 AD2d 687, 688 [2002]; *Matter of Brandon C.*, 237 AD2d 821, 822 [1997]). Accordingly, the neglect proceeding against him was properly dismissed.

Similarly, we find that Family Court properly dismissed the neglect proceeding against the mother. Although neither her failure nor that of the boyfriend to initially comply with the safety plan can be condoned, a finding of neglect must be based upon "a showing of imminent—rather than merely possible—danger of impairment to the child[ ]," which petitioner failed to demonstrate (*Matter of Javan W. [Aba W.]*, 124 AD3d 1091, 1093 [2015], *lv denied* 26 NY3d 905 [2015]). We do not find that the mother's conduct constituted such a significant failure to recognize a potential threat posed by the boyfriend as to rise to the level of neglect (*see Matter of Kayla F.*, 39 AD3d 983,

985-986 [2007]; *compare Matter of Lillian SS. [Brian SS.]*, 146 AD3d 1088, 1091-1092 [2017], *lvs denied* 29 NY3d 992, 919 [2017]). The parties' remaining contentions have been reviewed and found to be without merit.

Egan Jr., Devine, Aarons and Rumsey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as dismissed petitioner's application in proceeding No. 1 to adjudicate Kathleen NN. to be neglected by respondent Dennis NN.; said petition granted and matter remitted to the Family Court of Sullivan County for a dispositional hearing; and, as so modified, affirmed.