Matter of Thomas XX. (Thomas YY.) (2020 NY Slip Op 01218)





Matter of Thomas XX. (Thomas YY.)


2020 NY Slip Op 01218


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

527165

[*1]In the Matter of Thomas XX., Alleged to be a Neglected Child. Schoharie County Department of Social Services, Respondent; Thomas YY., Appellant.

Calendar Date: January 15, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Colangelo, JJ.


Christine E. Nicolella, Delanson, for appellant.
Schoharie County Department of Social Services, Schoharie (David P. Lapinel of counsel), for Schoharie County Department of Social Services, respondent.
James M. Bryant, Schoharie, attorney for the child.
Lee C. Hartjen, Cobleskill, for Suzanne XX., respondent.



Colangelo, J.
Appeal from an order of the Family Court of Schoharie County (Bartlett III, J.), entered June 25, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected.
Respondent is the father of the subject child (born in 2014). In April 2017, respondent and the child's mother had a physical altercation at home in the child's presence that stemmed from the mother's claim that respondent may have sexually abused the child. The mother left home with the child and sought help at a local business. The mother and the child were transported to the hospital for examination, where it was determined that the mother sustained bruising to her arms; the child had no signs of sexual abuse. In December 2017, petitioner filed a neglect petition against respondent that alleged, among other behaviors, that he has been a perpetrator of domestic violence, touched the child's penis inappropriately and has left the child unattended in his car. The petition further alleged that respondent has taken the child with him to buy and sell drugs, and that respondent has "exhibited strange and [bizarre] behaviors" while caring for the child. Following a hearing, Family Court found that respondent had neglected the child. Respondent appeals, arguing that the court's findings were not supported by the record.
We affirm. "To satisfy its burden on the neglect petition, petitioner had to prove by a preponderance of the evidence that respondent's failure 'to exercise a minimum degree of care' in providing proper supervision or guardianship resulted in the child's 'physical, mental or emotional condition' being impaired or placed 'in imminent danger of becoming impaired'" (Matter of Javan W. [Aba W.], 124 AD3d 1091, 1091 [2015] [internal citations omitted], lv denied 26 NY3d 905 [2015], quoting Family Ct Act § 1012 [f] [i]; see Matter of Jordyn WW. [Tyrell WW], 176 AD3d 1348, 1348-1349 [2019]). A finding of neglect is premised upon a finding of serious or imminent harm to the child, "'not just on what might be deemed undesirable parental behavior'" (Matter of Jordyn WW. [Tyrell WW.], 176 AD3d at 1349, quoting Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]; see Matter of Javan W. [Aba W.], 124 AD3d at 1091). A neglect finding requires only an imminent threat of injury or impairment, not actual injury or impairment, so long as the danger is near or impending, not merely possible (see Nicholson v Scoppetta, 3 NY3d at 369; Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1294 [2017]; Matter of Cameron O. [Scott O.], 147 AD3d 1257, 1258 [2017]; Matter of Xavier II., 58 AD3d 898, 899 [2009]). Thus, where, as here, the child is present during acts of domestic violence and is visibly upset and frightened by them, a neglect finding may result, including when there is only a single act of such violence (see Matter of Maggie YY. [Lisa ZZ.], 172 AD3d 1562, 1562 [2019]; Matter of Cori XX. [Michael XX.], 145 AD3d 1207, 1208 [2016]; Matter of Michael WW., 20 AD3d 609, 612 [2005]).
There is a sound and substantial basis in the record for Family Court's finding that respondent neglected the child (see Matter of Ellysha JJ. [Jorge JJ.], 173 AD3d 1287, 1289 [2019], lv denied 34 NY3d 901 [2019]). The mother testified to an incident that occurred on April 17, 2017, after respondent had given the child a shower and she noticed that the child's bottom was very red. When she asked respondent why, "he joked in a strange way" and suggested that they take a picture of it. After they went to sleep with the child between them, respondent "began moaning, making sexual sounds" and making inappropriate comments suggesting that she and the child sexually "gratified him." When the mother accused him of inappropriate behavior, respondent pinned her on the floor and smashed her head into the ground, all in the child's presence. After the mother broke free, respondent threw a pan filled with water at her, which missed her but hit the bed and splashed on the child, and the mother ran from the house with the child to a nearby business. An employee of the business corroborated the mother's account, testifying that, when the mother came in with the child, she repeated, "I'm scared, I'm scared, I don't want to go back." The employee described the mother as visibly upset and holding the child, who was wearing only a T-shirt and a towel wrapped around his lower body.
The mother also testified that respondent was exceedingly controlling and expressed "very strange beliefs about things that were frightening" to her, such as refusing to allow a computer on her lap during her pregnancy or to allow the child to play with musical toys because they would cause autism, and not allowing her or the child to drink tap water because the government put things into the water to control minds. In another incident, occurring in July 2017, a nurse testified that respondent brought the child to the emergency room for a cat scratch on his face and an abrasion on his penis, initially entering the hospital alone, leaving the child outside unattended in the car. The nurse further testified that, during the examination of the child, respondent touched the child's penis six times purportedly to show the nurse where the rash was, although the touching was not necessary because the rash was visible.
Respondent testified, essentially denying the allegations in the petition, including that he had ever committed an act of domestic violence against the mother. With regard to the April 2017 incident, he claimed that the mother was the aggressor and that he had merely defended himself by holding her arms. He denied touching the child inappropriately or leaving the child unattended in his car during the emergency room visit. He emphasized his opinion that he had exhibited, as Family Court aptly characterized it, "perfect parenting," and that the mother had many housekeeping and parenting deficits.
Family Court credited the testimony of the mother and other witnesses called by petitioner, finding that their testimony established that respondent perpetrated domestic violence against the mother in the child's presence, "inappropriately repeatedly" touched the child's penis during the emergency room examination and left the child unattended in his car. The court discredited respondent based, in part, on his in-court demeanor and "grandiose presentation." The record fully supports these findings. The court further found that respondent was exceedingly controlling, exhibited bizarre behaviors and expressed opinions that had "serious negative implications as to his parenting ability and judgment," all of which supported a finding of neglect. According considerable deference to Family Court's factual findings and credibility determinations (see Matter of Jade F. [Ashley H.], 149 AD3d 1180, 1182 [2017]; Matter of William KK. [Samantha LL.], 146 AD3d 1052, 1053 [2017]), we find that the record amply supports the determination that respondent neglected the child. As the court's finding of neglect is "supported by a sound and substantial basis in the record" (Matter of Ellysha JJ. [Jorge JJ.], 173 AD3d at 1289), we will not disturb it.
Lynch, J.P., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.