Matter of Messiah RR. (Christina RR.) (2021 NY Slip Op 00066)





Matter of Messiah RR. (Christina RR.)


2021 NY Slip Op 00066


Decided on January 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 7, 2021

530496

[*1]In the Matter of Messiah RR., Alleged to be a Neglected Child. Sullivan County Department of Family Services, Appellant; Christina RR., Respondent. (And Another Related Proceeding.)

Calendar Date: November 18, 2020

Before: Lynch, J.P., Clark, Mulvey and Colangelo, JJ.


Sullivan County Department of Family Services, Monticello (Constantina Hart of counsel), for appellant.
Jane M. Bloom, Monticello, for respondent.
Ivy M. Schildkraut, Monticello, attorney for the child.



Colangelo, J.
Appeal from an order of the Family Court of Sullivan County (McGuire, J.), entered November 20, 2019, which dismissed petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent is the mother of a child (born in 2019), who is the subject of these proceedings. Respondent's five older children were the subjects of separate neglect proceedings and were removed from her care in December 2018.[FN1] Within days of the child's birth, petitioner received a hotline report that alerted petitioner to the birth of the child, alleged that respondent's other children had been removed from her care in the past and that respondent had not yet completed mental health and drug treatment programs required of her. A caseworker who visited respondent and the child learned that they were staying with respondent's friend, who was also the subject of a hotline report, and that another male, who is a registered sex offender, was often there. Thereafter, respondent, at petitioner's suggestion, voluntarily entered into a written safety plan, which, among other things, provided respondent and the child with temporary emergency housing at a hotel. Respondent also agreed to remain sober and to follow through with the court-ordered substance abuse and mental health treatment. An emergency housing case was opened on respondent's behalf, and respondent signed an independent living plan, agreeing, among other things, to search for permanent housing.
In July 2019, petitioner commenced the first of these two Family Ct Act article 10 proceedings against respondent seeking to adjudicate the child to be neglected and derivatively neglected. The petition set forth the allegations in the hotline report, stated that respondent was residing in a friend's home and that a registered sex offender was also living at that home, and accused respondent of failing to substantially address the issues that resulted in the neglect findings and continued placement of her other children.
Thereafter, a second hotline report alleged that respondent drank alcohol and used marihuana and Percocet to the point of impairment while acting as the sole caretaker for the child, left the child unsupervised for an unknown amount of time, and used unknown substances to the point of impairment while acting as the sole caretaker for her other four children, since removed. In response to the second hotline report and prior to the second neglect petition being filed, a safety check was conducted by petitioner's caseworker at the hotel. Aside from advising respondent to remove clothing and other items from the child's pack and play crib to allow for the child's safe sleeping, the caseworker found the child to be healthy and safe. Approximately two days after the safety check, petitioner's fraud investigator, after a conversation with the receptionist at the hotel where respondent was living, concluded that respondent was no longer [*2]staying at the hotel. Petitioner immediately terminated respondent's emergency housing and instructed hotel staff to "ball lock" respondent's room. Respondent was rendered homeless and, having no shelter for the child, signed a three-day consent to remove the child to petitioner's care to afford her time to find appropriate housing.
Thereafter, the second Family Ct Act article 10 proceeding was commenced against respondent, alleging that respondent neglected the child based upon, among other things, the allegations contained in the second hotline report. Following a fact-finding hearing on both petitions, Family Court determined that petitioner failed to prove neglect or derivative neglect, dismissed the petitions and ordered the return of the child to respondent. Petitioner appeals.[FN2]
We affirm. "'To satisfy its burden on the neglect petition[s], petitioner had to prove by a preponderance of the evidence that [respondent's] failure to exercise a minimum degree of care in providing proper supervision or guardianship resulted in the child[]'s physical, mental or emotional condition being impaired or placed in imminent danger of becoming impaired'" (Matter of Jarrett SS. [Jade TT.-Scott SS.], 183 AD3d 1031, 1032 [2020], quoting Matter of Thomas XX. [Thomas YY.], 180 AD3d 1175, 1175-1176 [2020] [internal quotations marks and citations omitted]; see Family Ct Act § 1012 [f] [i] [B]; Matter of Jordyn WW. [Tyrell WW.], 176 AD3d 1348, 1349 [2019]). "A finding of neglect is premised upon a finding of serious or imminent harm to the child, not just on what might be deemed undesirable parental behavior" (Matter of Thomas XX. [Thomas YY.], 180 AD3d at 1176 [internal quotation marks and citations omitted]; see Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]). "A neglect finding requires only an imminent threat of injury or impairment, not actual injury or impairment, so long as the danger is near or impending, not merely possible" (Matter of Thomas XX. [Thomas YY.], 180 AD3d at 1176 [citations omitted]; see Nicholson v Scoppetta, 3 NY3d at 369; Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1294 [2017]). "When determining whether a parent or guardian has failed to exercise a minimum degree of care, the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Raelene B. [Alex D.], 179 AD3d 1315, 1317 [2020] [internal quotation marks and citations omitted]; see Matter of Ellysha JJ. [Jorge JJ.], 173 AD3d 1287, 1288 [2019], lv denied 34 NY3d 901 [2019]). "We accord deference to Family Court's credibility determinations and factual findings if they are supported by a sound and substantial basis in the record" (Matter of Jarrett SS. [Jade TT.-Scott SS.], 183 AD3d at 1033 [citation omitted]; see Matter of Ellysha JJ. [Jorge JJ.], 173 AD3d at 1288).
At the fact-finding hearing, the testimony of petitioner's caseworkers established that respondent was compliant with the independent [*3]living plan and that the child was found to be safe during the safety check conducted at the hotel following the second hotline report. It was further established that petitioner terminated respondent's emergency housing, effective immediately, based upon the conclusion by petitioner's fraud investigator that respondent was not utilizing the emergency housing provided to her at the hotel, which was never substantiated. The record further reflects that respondent was provided with a notice stating that "[respondent] ha[s] not been utilizing the emergency housing provided at the [hotel]. The agency is closing your room effective [immediately]." Petitioner's witnesses admitted, however, that respondent was not provided notice of her right to a fair hearing to challenge the termination of her emergency housing and that she was only informed that she would be barred from emergency housing for a period of 30 days pursuant to discretionary county policy. Further, petitioner's caseworker testified that respondent categorically denied allegations made against her in the second hotline report of drug and alcohol use, and the only evidence of drug activity was the content of a hotline call, which Family Court ruled inadmissible. There is also no record evidence demonstrating that respondent knew that the male living with her friend was a registered sex offender or that he had access to the child.
Significantly, petitioner allowed the child to remain with respondent despite respondent's noncompliance with the December 2018 order. In fact, the record reflects that petitioner did not seek to remove the child until respondent's temporary housing was terminated. Thus, even though petitioner was aware of respondent's alleged issues of mental health and drug and alcohol use from the prior proceedings, petitioner assisted respondent with temporary housing and a safety plan. Further, although there was testimony indicating that respondent did not fully comply with the rules at the hotel, respondent was not locked out of her room and rendered homeless because of any alleged violation of hotel rules. Rather, respondent's emergency housing was terminated, and she was rendered homeless, based on the unsubstantiated conclusion of petitioner's fraud investigator that the hotel room was not being used. In that regard, Family Court drew an adverse inference against petitioner for its failure to call the fraud investigator as a witness. Thus, it was clear that the second petition and the removal of the child derived from respondent's homelessness. In view of the foregoing, we agree with Family Court that petitioner failed to meet its burden of showing that respondent neglected the child (see Matter of Jordyn WW. [Tyrell WW.], 176 AD3d at 1349-1350; Matter of Javan W. [Aba W.], 124 AD3d 1091, 1093 [2015], lv denied 26 NY3d 905 [2015]).
Turning to Family Court's dismissal of the allegations of derivative neglect, "'evidence that a parent neglected a child is admissible [*4]to prove that the parent neglected another child, but may not provide the sole basis for a determination of derivative neglect unless the parent's past conduct demonstrates fundamental flaws in the parent's understanding of the duties of parenthood — flaws that are so profound as to place any child in his or her care at substantial risk of harm'" (Matter of Charles Q. [Pamela Q.], 182 AD3d 639, 641 [2020], quoting Matter of Derrick GG. [Jennifer GG.], 177 AD3d 1124, 1126 [2019], lv denied 35 NY3d 902 [2020]; see Matter of Choice I. [Warren I.], 144 AD3d 1448, 1449 [2016]; Matter of Warren RR. [Brittany Q.], 143 AD3d 1072, 1074 [2016], lv denied, 29 NY3d 905 [2017]). Here, the proof relied upon by petitioner to support its claim of derivative neglect were the neglect findings with respect to respondent's other children, which is insufficient by itself to substantiate the allegation of derivative neglect absent additional evidence of respondent's continued drug and alcohol abuse or other evidence demonstrating flaws in respondent's understanding of the duties of parenthood so as to place the child in her care at substantive risk of harm (see Matter of Choice I. [Warren I.], 144 AD3d at 1449-1450). Here, such evidence was not produced at the fact-finding hearing. Accordingly, we uphold Family Court's determination that petitioner did not meet its burden of establishing derivative neglect.
Lynch, J.P., Clark and Mulvey, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: In December 2018, following a finding of neglect with respect to two of the children, respondent consented to an order of disposition requiring her to, among other things, complete a mental health evaluation and drug treatment program and to obtain safe and suitable housing.

Footnote 2: This Court granted petitioner's motion for a stay of Family Court's order pending appeal (2019 NY Slip Op 86969[U]).