Matter of Josiah P. (Peggy P.) (2021 NY Slip Op 04936)





Matter of Josiah P. (Peggy P.)


2021 NY Slip Op 04936


Decided on September 2, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:September 2, 2021

529852
[*1]In the Matter of Josiah P. and Another, Alleged to be Neglected Children. Greene County Department of Social Services, Respondent; Peggy P., Appellant. (Proceeding No. 1.)
In the Matter of Josiah P. and Another, Alleged to be Neglected Children. Greene County Department of Social Services, Respondent; Corey O., Appellant. (Proceeding No. 2.) (And Two Other Related Proceedings.)

Calendar Date:February 9, 2021

Before:Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Dana L. Salazar, East Greenbush, for Peggy P., appellant.
Michelle I. Rosien, Philmont, for Corey O., appellant.
Greene County Department of Social Services, Catskill (Jennifer Sandleitner of counsel), for respondent.
Daniel Gartenstein, Kingston, attorney for the children.
Pamela J. Joern, East Chatham, attorney for the child.



Pritzker, J.
Appeals from three orders of the Family Court of Greene County (Wilhelm, J.), entered June 12, 2019 and July 12, 2019, which, among other things, granted petitioner's applications, in four proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent Corey O. (hereinafter the father) is the biological father of three children (born in 2011, 2012 and 2013) and is the stepfather of two biological children (born in 2007 and 2013) of respondent Peggy P. (hereinafter the mother). Respondents were married in April 2018. In February 2019, petitioner commenced these four proceedings seeking to adjudicate the five subject children to be neglected by respondents based on an incident occurring on January 1, 2019, which prompted the oldest child to call the police and report that the father was trying to hurt the mother. Following that incident and one day prior to the commencement of these proceedings, respondents consented to the removal of the children and to the children's placement in foster care. The neglect petitions alleged that respondents engaged in acts of domestic violence and misused alcohol to the point of intoxication while caring for the children.
After a two-day fact-finding hearing, Family Court found that the children were neglected by respondents. Following a dispositional hearing, the court entered two orders of disposition setting forth certain conditions, including that respondents would remain under the supervision of petitioner for one year and that respondents may have visitation with the children at the discretion of petitioner. Respondents appeal.[FN1]
Respondents and the attorneys for the children [FN2] assert that Family Court's finding of neglect is not supported by a sound and substantial basis in the record. "'[T]he party seeking to establish neglect[] is required to prove by a preponderance of the evidence that the children's physical, mental or emotional condition was impaired or was imminently in danger of becoming impaired and that the actual or threatened harm to the children was a consequence of [the respondents'] failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship'" (Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 962 [2020], quoting Matter of Ellysha JJ. [Jorge JJ.], 173 AD3d 1287, 1287 [2019], lv denied 34 NY3d 901 [2019] [brackets omitted]). "'A finding of neglect is premised upon a finding of serious or imminent harm to the [children], not just on what might be deemed undesirable parental behavior'" (Matter of Messiah RR. [Christina RR.], 190 AD3d 1055, 1057 [2021], quoting Matter of Thomas XX. [Thomas YY.], 180 AD3d 1175, 1176 [2020]). Imminent danger must be near or impending, not merely possible (see Nicholson v Scoppetta, 3 NY3d 357, 369 [2004]; Matter of Thomas XX. [Thomas YY.], 180 AD3d at 1176).
"At a fact-finding hearing, only 'competent, material and relevant evidence' may be admitted" ([*2]Matter of Lydia DD. [Khalil P.], 110 AD3d 1399, 1400 [2013], quoting Family Ct Act § 1046 [b] [iii] [citations omitted]). "A child's previous out-of-court allegations of abuse or neglect are admissible but, to support a finding of abuse or neglect, must be corroborated by other evidence introduced during the proceeding that tends to establish their reliability" (Matter of Justin CC. [Tina CC.], 77 AD3d 1056, 1057 [2010] [internal quotation marks and citations omitted], lv denied 16 NY3d 702 [2011]; see Matter of Lily BB. [Stephen BB.], 191 AD3d 1126, 1127 [2021], lv denied 37 NY3d 927 [2021]). "'[O]nly a relatively low degree of corroborative evidence is necessary to satisfy this standard, and the reliability of the corroboration, as well as issues of credibility, are matters entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record'" (Matter of Charles Q. [Pamela Q.], 182 AD3d 639, 640 [2020], quoting Matter of Lawson O. [Andrew O.], 176 AD3d 1320, 1321 [2019], lv denied 35 NY3d 902 [2020]).
At the fact-finding hearing, a 911 dispatcher testified that, on January 1, 2019 at 10:00 p.m., he received a call regarding an incident at a residence in the Town of Coxsackie, Greene County, and the audio recording of the 911 call was played. Notably, the oldest child stated that the father "just broke into my house" and that the mother was in "trouble." The oldest child responded in the negative upon being asked if the father had a weapon, but asked police to hurry because the father had "gone literally nuts." A state trooper testified that on January 1, 2019, at approximately 10:15 p.m., he responded to a 911 call at the address given in the 911 call; upon arrival, he observed the father outside of the residence. The trooper testified that the father appeared intoxicated and admitted that he had been consuming alcohol that evening. The trooper detained the father in a police vehicle and then interviewed the mother, who stated that she and the father had gotten into an argument when the oldest child told the mother that the father had given her alcohol. According to the trooper, the mother had locked the father out of the house but he was able to get back inside, at which point an argument between respondents ensued. The trooper stated that the mother reported that the argument had involved pushing, shoving and furniture being knocked over and that the oldest child left the residence and called 911. The trooper stated that the father had scratches on his face. On cross-examination, the trooper conceded that that he did not administer a breathalyzer test to the father. The trooper also confirmed that the oldest child told him that the father had given her "three or four shots of [r]um," but that she did not appear intoxicated and a breath test determined her blood alcohol level to be .01.
Another state trooper testified that he was dispatched to respond to a disturbance at the same residence [*3]approximately nine months earlier, on the evening of April 17, 2018, and that, when he arrived on scene, there was an intoxicated male outside of the residence claiming that his car had been damaged by respondents. This trooper learned that there had been a party at the residence that evening where a child of the mother, who was under the age of 21, and others had been given alcohol. Ultimately, based on these allegations, the mother and the father were arrested for unlawful dealing with a child and criminal mischief.
A caseworker employed by petitioner testified that she became involved in an investigation of respondents after petitioner received a report regarding the January 1, 2019 incident. The caseworker testified that she interviewed the oldest child a few weeks later regarding the incident and the oldest child told the caseworker that the father had given her three shots of alcohol on that evening. The caseworker testified that the oldest child indicated during their interview that the mother and the father fight and, on that night, she had called the police from her grandfather's house because the father had put his hands on the mother. The caseworker stated that she interviewed one of the other children, who said that the mother and the father "fight with their words." The caseworker testified that she interviewed the father's children together, who revealed their knowledge of respondents drinking beer and not getting along. A second caseworker employed by petitioner testified that petitioner received a report in the early morning on January 2, 2019 regarding a domestic incident that had occurred the night before. The second caseworker interviewed the mother, who stated that she and the father had gotten into an argument and that the father was not acting like himself and "kind of lost his mind." In the second caseworker's interview with the oldest child, she stated that the father gave her "three to five shots" of rum. The second caseworker stated that the mother has a history of three indicated reports, and the father has a history of one indicated report.
In opposition, the grandfather testified that he lives approximately 250 feet away from respondents' residence and, on January 1, 2019, he went to their residence to have dinner. The grandfather stated that he brought a "pocket size bottle" of rum with him that evening and that he was "the primary person drinking it." The grandfather further testified that he left the bottle on the kitchen counter while he and the mother were in the basement; according to the grandfather, the father and the oldest child were still upstairs. The grandfather stated that the oldest child called 911 from his residence that evening. The grandfather was present for the argument between respondents and opined that it was not necessary to call the police. He also testified that the oldest child was not upset when she called 911, but was calm and just wanted the argument broken up. The grandfather [*4]testified that he visits respondents' residence two to three times a month and has not observed respondents arguing or consuming alcohol during these visits.
The father testified that on January 1, 2019, when he saw the oldest child drinking a shot of alcohol, he yelled that she should put it down and tell the mother what she did. According to the father, the oldest child told the mother that he was yelling at her, which caused the mother and the father to get into an argument. The father stated that the oldest child ran out of the house to the grandfather's house to call the police. The father opined that the oldest child was mad at him for getting her in trouble. The father testified that he had one glass of wine and one beer that evening, and that the mother had one glass of wine with dinner. Regarding the scratches that the officers observed on his face that evening, the father stated that he injured himself while ripping up hardwood. With respect to the April 2018 altercation, the father denied damaging any vehicle and providing alcohol to the individuals and asserted that neither he nor the mother had been drinking that night. The father testified that he and the mother began counseling in February 2019. The father also stated that the verbal altercations between he and the mother do not involve raising voices or cursing.
The mother testified that when she and the father get into verbal arguments, she will leave the residence and take the children with her. The mother stated that there were two occurrences where she called police seeking assistance in de-escalation. With respect to the January 2019 incident, the mother testified that she was in the basement with the grandfather when the oldest child ran down the stairs and asked her to come upstairs. The mother stated that she and the father began to argue about one of the children sneaking candy after dinner.[FN3] At that point, the grandfather left respondents' residence and, shortly thereafter, the oldest child went to his home to call the police. The mother testified that all the children were asleep during the altercation, with the exception of the oldest child. The mother stated that she did not know whether the father gave the oldest child any alcohol, but that she has never seen him do so before. The mother testified that neither she nor the father lost control during their altercation. The mother stated that when she confronted the oldest child about the alcohol in her system, she claimed to have snuck it from the kitchen. With respect to the April 2018 incident, the mother testified that the children were in bed during that altercation and she did not lose control of herself during the incident nor did she damage a vehicle. The mother also testified that she does not drink alcohol on a regular basis and that, in addition to marriage counseling, she and the father have taken anger management and parenting classes.
Based on the foregoing, Family Court's adjudication [*5]of the children as neglected is not supported by a sound and substantial basis in the record.[FN4] With respect to the April 2018 incident, petitioner did not sufficiently demonstrate the presence of the children during the altercation that occurred. Given that "a finding of imminent danger is contingent on the child[ren] being present," the evidence relating to that incident was not relevant and was insufficient to support a finding of neglect (Matter of Jordyn WW. [Tyrell WW.], 176 AD3d 1348, 1349 [2019]; see Matter of Imani O. [Marcus O.], 91 AD3d 466, 468 [2012]). With respect to the January 2019 incident, it is undisputed that all of the children except the oldest child were asleep during the altercation; as such, the evidence presented could not support a finding of neglect as to the younger children. As to the oldest child, it is true that "a single act of domestic violence may be sufficient to establish neglect if the child is present for such violence and is visibly upset and frightened by it" (Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d at 963 [internal quotation marks, brackets and citation omitted]; see Matter of Thomas XX. [Thomas YY.], 180 AD3d at 1176). However, the proof at the fact-finding hearing failed in this regard because it was not established that the oldest child was visibly upset or frightened. Thus, petitioner failed to demonstrate that the oldest child was in imminent risk of emotional or physical impairment (see Nicholson v Scoppetta, 3 NY3d at 371; Matter of Javan W. [Aba W.], 124 AD3d 1091, 1092 [2015], lv denied 26 NY3d 905 [2015]). Moreover, the oldest child's out-of-court statements that the father gave her two to three shots of alcohol were not corroborated by the other evidence presented by petitioner, and the mere "repetition of an accusation by a child does not corroborate that child's prior account" (Matter of Cadence GG. [Lindsey II.], 124 AD3d 952, 954 [2015] [internal quotation marks, brackets and citations omitted]; see Matter of Lily BB. [Stephen BB.], 191 AD3d at 222). To the contrary, even petitioner's witnesses conceded that such a level of alcohol consumption was not supported by their observations of the oldest child's demeanor and her .01 blood alcohol content. With respect to the allegations of alcohol abuse while caring for the children, "[t]here was insufficient evidence that [respondents] 'misused alcoholic beverages to the extent that [they] lost self-control of [their] actions,' or that the physical, mental, or emotional condition of the children had been impaired or was in imminent danger of becoming impaired" (Matter of Cameron D. [Lavon D.], 154 AD3d 849, 850 [2017], quoting Family Ct Act § 1012 [f] [i] [B] [brackets omitted]). Under the circumstances, the June 12, 2019 order of fact-finding must be reversed and the petitions dismissed (see Matter of Aiden J. [Armando K.], ___ AD3d ___, ___, 2021 NY Slip Op 04637, *2 [2021]; Matter of Lexie CC. [Laine CC.], 190 AD3d 1165, 1168 [2021[*6]]). Finally, respondents, by their briefs, have abandoned the appeals from the dispositional orders entered July 29, 2019 because these orders have been rendered moot. In any event, based upon our finding herein, these orders must be reversed, as the underlying neglect petitions are being dismissed.
Garry, P.J., Egan Jr., Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the orders are reversed, on the law, without costs, and petitions dismissed.



Footnotes

Footnote 1: Respondents moved for a stay pending appeal, which motion this Court denied (2020 NY Slip Op 76959[U]).

Footnote 2: This Court previously withheld decision and appointed a separate attorney for the child for the oldest child (192 AD3d 1347 [2021]).

Footnote 3: The father also testified that he and the mother argued about one of the children sneaking candy.

Footnote 4: We note that Family Court failed to articulate the factual holdings supporting its neglect determination, only indicating that petitioner proved the facts alleged that supported a finding of neglect. "Although not the best practice, this procedure did apprise respondent[s] of the relevant factual findings and, thus, sufficiently complied with the statutory requirement that the court 'state the grounds' for its neglect finding" (Matter of Alexisana PP. [Beverly PP.], 136 AD3d 1170, 1171 [2016], quoting Family Ct Act § 1051 [a]).