Matter of Bonnie FF. (Marie VV.) (2023 NY Slip Op 05294)

Matter of Bonnie FF. (Marie VV.)

2023 NY Slip Op 05294

Decided on October 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 19, 2023

535238
[*1]In the Matter of Bonnie FF. and Others, Alleged to be Abused and/or Neglected Children. Commissioner of Social Services of Chemung County, Respondent; Marie VV. et al., Appellants.

Calendar Date:September 7, 2023

Before:Garry, P.J., Lynch, Pritzker, Reynolds Fitzgerald and Powers, JJ.

Michelle I. Rosien, Philmont, for Marie VV., appellant.
Lisa K. Miller, McGraw, for Harold W., appellant.
M. Hyder Hussain, County Attorney, Elmira (Kathryn M. Hansen of counsel), for respondent.
Donna C. Chin, Niverville, attorney for the child.
Pamela Doyle Gee, Big Flats, attorney for the children.

Reynolds Fitzgerald, J.
Appeals from three orders of the Family Court of Chemung County (Richard W. Rich Jr., J.), entered January 24, 2022, March 22, 2022 and March 25, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent Harold W. (hereinafter the father) is the father of the three subject children (a son born in 2007 [hereinafter the older son], a daughter born in 2007 and a son born in 2010 [hereinafter the youngest child]). Respondent Marie VV. (hereinafter the mother) is the biological mother of the youngest child and the father's long-term paramour.[FN1] In 2019 the older son and the daughter, who were in the physical custody of their biological mother, unilaterally refused to participate in parenting time with the father. In 2020, the father filed an enforcement petition and a modification of custody petition, resulting in Family Court ordering petitioner to conduct a Family Ct Act § 1034 investigation as to the reasons for the older son's and the daughter's refusal to see the father. Following this investigation, petitioner filed an abuse and neglect petition against the father and the mother. Specifically, the petition alleged the use of excessive corporal punishment, exposure of the children to pornography and sexual acts of the father and the mother and domestic violence. Following a fact-finding hearing, Family Court adjudicated the subject children to be neglected. It then held a dispositional hearing, after which, as relevant here, the court determined that the youngest child would remain in the father and the mother's custody subject to certain conditions including, among others, that they complete mental health evaluations and participate in parenting education programs. The father and the mother appeal.
The father and the mother contend that Family Court's finding of neglect is not supported by a sound and substantial basis in the record. We disagree. "The party seeking to establish neglect is required to prove by a preponderance of the evidence that the children's physical, mental or emotional condition was impaired or was imminently in danger of becoming impaired and that the actual or threatened harm to the children was a consequence of the respondents' failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship" (Matter of Josiah P. [Peggy P.], 197 AD3d 1365, 1366 [3d Dept 2021] [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1077 [3d Dept 2022], lv denied 38 NY3d 912 [2022]). "In determining whether . . . respondent[s] failed to exercise a minimum degree of care, the critical inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Jaxxon WW. [Donald XX.], 200 AD3d 1522, 1523 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter [*2]of Nina VV. [Wendy VV.], 216 AD3d 1215, 1216 [3d Dept 2023]). Additionally, a parent or a person legally responsible for the children "may be held accountable for the neglectful acts of [another] if he or she knew or should reasonably have known that the child[ren] [were] in danger" (Matter of Nina VV. [Wendy VV.], 216 AD3d at 1216 [internal quotation marks and citations omitted]; see Matter of Y. SS. [E. SS.], 211 AD3d 1390, 1391 [3d Dept 2022]). "Family Court's factual findings and credibility determinations are afforded great weight and will not be disturbed so long as they are supported by a sound and substantial basis in the record" (Matter of Kaelani KK. [Kenya LL.], 201 AD3d 1155, 1156 [3d Dept 2022] [internal quotation marks and citation omitted]; see Matter of Joshua R. [Kimberly R.], 216 AD3d 1219, 1220 [3d Dept 2023]).
At the hearing, a certified forensic examiner testified that the father and the mother had a history with petitioner for over 10 years and described previous indicated reports. Additionally, she delineated how she conducted the interviews of the older son and the daughter.[FN2] In the video recording of the older son's interview, he provided details as to the excessive corporal punishment employed by the father, including recounting that the father struck him with a belt, struck him in the face, hit him with a two-by-four board, grabbed him by the throat and threw him to the ground and made him hold squats for hours. The older son further stated that he observed the father and the mother engaging in oral sex and that the father showed him pornography. Additionally, the older son disclosed that he heard what sounded like the father striking the mother and that she cried shortly thereafter.
In the video recording of the daughter's interview, she described that the father hit her with a belt and dragged her across the floor when she tried to run away. She also stated that she heard and observed the father and the mother engaging in oral sex and was disgusted by it. The daughter further recounted incidents of domestic violence, including seeing the mother and the father throw items at each other. Both children stated that the youngest child witnessed all of the above incidents, was disciplined in the same manner as they were, cried when he observed the father and the mother fighting, and imitated their sexual acts by thrusting his hips.
The caseworker testified that as part of her Family Ct Act § 1034 investigation she engaged in a conversation with the older son and the daughter and relayed their reasons for refusing to attend parenting time with the father.[FN3] She also described previous indicated reports involving the father and the mother. Lastly, she testified that the children reported that the youngest child witnessed the sexual contact between the father and the mother, acts of domestic violence between them, and was disciplined in the same manner as the older son and the daughter.
The biological mother of the older son [*3]and the daughter testified that for many years the children have reported that the father used severe corporal punishment on them. She described the incident that led to the cessation of parenting time as when the father came to her residence to attempt to confront the older son for telling a third party that the father had physically struck him. Additionally, she stated that the daughter blamed her for forcing her to attend parenting time with the father. She further stated that the children have been negatively affected by their parenting time with the father, as the daughter does not trust people and the older son has temper issues and is very attached to her. Lastly, she testified that the children have struggled at school, and that the older son has refused to attend school at various times.
The mother testified by simply categorically denying all allegations. When the father took the stand, he largely confirmed the occurrences of corporal punishment; however, he claimed that these incidents occurred many years ago, and that more recently having the children perform "squats" is his preferred means of punishment as "[he] knew they hated it the most." The father confirmed that he attempted to confront the older son at his biological mother's house and stated, "he is my kid, I will beat his a**." He further confirmed that he views pornography online and on his cell phone via the application Chatterbait, averred that the application is password protected, and as such the pornography is not accessible to the children. Finally, when questioned on his desire to see his children and rebuild his relationship with them, the father averred that while he certainly loves his children, he was not going to "kiss anybody's b" or "jump through hoops" to achieve this.
There is ample evidence in the record to support the allegations of neglect by a preponderance of the evidence, including that the father engaged in excessive corporal punishment, that the father and the mother engaged in acts of domestic violence in the presence of the children, that they did not take appropriate steps to prevent the children from observing them engage in sexual relations nor prevent them from viewing the father's pornography. Moreover, the older son's and the daughter's failure to provide specific dates did not undermine their credibility or Family Court's finding of neglect (see Matter of Chloe L. [Samantha L.], 200 AD3d 1234, 1236 [3d Dept 2021]; Matter of Makayla I. [Caleb K.], 162 AD3d 1139, 1142 [3d Dept 2018]). Despite the father's contention, the children's statements were sufficiently corroborated based on the testimony of the social worker, the biological mother and the cross-corroboration of the older son and the daughter (see Matter of Isabella I. [Ronald I.], 180 AD3d 1259, 1262 [3d Dept 2020]; Matter of Jade F. [Ashley H.], 149 AD3d 1180, 1184 [3d Dept 2017]). We further reject the father's contention that thealleged neglectful acts are too remote in time to be [*4]relevant. Family Ct Act § 1046 does not place a time limit on the admissibility of prior findings and our courts have not established a bright-line temporal rule prohibiting the consideration of prior protective determinations (see Matter of Evelyn B., 30 AD3d 913, 915 [3d Dept 2006], lv denied 7 NY3d 713 [2006]). Moreover, the children described the neglectful acts occurring in each of the residences that they lived in, thus establishing an ongoing, general pattern of continuing neglect resulting in the children's physical, mental or emotional impairment and the threat of further impairment in the future (see Matter of Nina VV. [Wendy VV.], 216 AD3d at 1217; Matter of Evelyn B., 30 AD3d at 915).
Nor can we say that Family Court erred in discrediting the mother's testimony. Based on the evidence, confirmed in the record, the mother's failure to intervene and take measures to prevent the excessive corporal punishment employed by the father, and to prevent the children's observations of domestic violence and sexual relations, constituted neglect (see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d at 1079; Matter of Justin O., 28 AD3d 877, 879 [3d Dept 2006]). As such, there is a sound and substantial basis in the record to support the finding of neglect as to all three children (see Matter of Joshua R. [Kimberly R.], 216 AD3d at 1222; Matter of Kaelani KK. [Kenya LL.], 201 AD3d at 1157).[FN4]
Lastly, the father and the mother correctly argue that the order of disposition references testimony not admitted into evidence at the hearing. As such, the matter is remitted to Family Court to strike portions of the order containing the improper testimony. The father's and the mother's remaining contentions, to the extent that they are not expressly addressed herein, have been examined and found to be unavailing.
Garry, P.J., Lynch, Pritzker and Powers, JJ., concur.
ORDERED that the orders entered January 24, 2022 and March 22, 2022 are affirmed, without costs.
ORDERED that the order entered March 25, 2022 is reversed, on the facts, without costs, and matter remitted to the Family Court of Chemung County to strike portions thereof referencing testimony not admitted into evidence.

Footnotes

Footnote 1: Although the mother references that Family Court failed to find that she is a person legally responsible for the care of the father's older son and the daughter, the mother does not argue this contention in her brief. Moreover, the record is replete that she provided general care of the older son and the daughter including cooking, feeding, bathing, cleaning their clothes and disciplining them.

Footnote 2: The father failed to preserve his challenge to the forensic interviews as he did not object to their admission (see Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 966 n 3 [3d Dept 2020]).

Footnote 3: These reasons were the same allegations as the children later related to the forensic examiner.

Footnote 4: Although not determinative, we note that the attorney for the children representing the older son and the daughter and the attorney for the child representing the youngest child advocate to affirm Family Court's finding of neglect.